GEORGE B. NEWHOUSE, JR. (Cal. Bar # 107032)
gnewhouse@brownwhitelaw.com
SYDNEY M. MEHRINGER (Cal. Bar # 245282)
smehringer@brownwhitelaw.com
BROWN WHITE & NEWHOUSE LLP
333 South Hope Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 613-0500
Fax: (213) 613-0550

Attorneys for Proposed Defendants/Intervenors
ARM LTD. and ARM, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAZOMI COMMUNICATIONS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NOKIA CORPORATION, NOKIA INC., MICROSOFT CORPORATION, AMAZON.COM, INC., WESTERN DIGITAL CORPORATION, WESTERN DIGITAL TECHNOLOGIES, INC., GARMIN LTD., GARMIN CORPORATION, GARMIN INTERNATIONAL, INC., GARMIN USA, INC., SLING MEDIA, INC., VIZIO, INC., IOMEGA CORPORATION,<br><br>Defendants. | SA CV 10-151-DOC (RNBx)<br><br>Hon. David O. Carter<br><br>**BRIEF IN SUPPORT OF MOTION OF ARM, LTD. AND ARM, INC. TO INTERVENE**<br><br>**JURY TRIAL DEMANDED**<br><br>Hearing:<br>Date: June 7, 2010<br>Time: 8:30 AM<br>Courtroom: 9D |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................1

BACKGROUND.........................................................................................................3

I. ARM's Accused Products..................................................................................3

II. The Overlap Between The Original Litigation And The Existing Litigation. ...4

III. The Defendants Lack Requisite Knowledge Of The Accused Jazelle Technology And Do Not Even Use That Technology As Nazomi Knows From The Original Litigation. ...................................................................................5

ARGUMENT..............................................................................................................8

I. ARM Should Be Allowed To Intervene As Of Right Pursuant To Fed. R. Civ. P. 24(a). ....................................................................................................8

   A. ARM's Motion For Intervention Is Timely. ...............................................8

   B. ARM Has An Interest In The Subject Matter Of This Proceeding. ............9

   C. The Court's Decision In This Case May Impair Or Impede ARM's Ability To Protect Its Interests..................................................................11

   D. The Other Defendants Cannot Adequately Protect ARM's Interests.......11

II. In The Alternative, ARM Satisfies All Of The Requirements For Permissive Intervention Under Fed. R. Civ. P. 24(b). ......................................................14

CONCLUSION........................................................................................................ 15

**TABLE OF AUTHORITIES**

**CASES**

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  2010 U.S. App. LEXIS 5966 (Fed. Cir. March 22, 2010) .................................. 5

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ................................................................... 8, 9

*Coalition for a Sustainable Delta v. Carlson*,
  2008 U.S. Dist. Lexis 42629 (E.D. Cal. 2008) ............................................ 9

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) .................................................................... 9

*Forest Conservation Council v. United States Forest Service*,
  66 F.3d 1489 (9th Cir. 1995) .................................................................... 9

*Gonzalez v. Arizona*,
  485 F.3d 1041 (9th Cir. 2007) .................................................................. 8

*Greene v. United States*,
  996 F.2d 973 (9th Cir. 1993) .................................................................... 10

*Honeywell Int'l Inc. v. Audiovox Comms. Corp.*,
  2005 U.S. Dist. LEXIS 22933 (D. Del. 2005) ............................................ 10

*Israel Bio-Engineering Project v. Amgen, Inc.*,
  401 F.3d 1299 (Fed. Cir. 2005) ................................................................ 13

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) .................................................................. 14

*LG Elecs., Inc. v. Q-Lity Computer, Inc. v. Asustek Computer, Inc.*,
  211 F.R.D. 360 (N.D. Cal. 2002) ........................................................... 10, 11

*MedImmune Inc. v. Genentech Inc.*,
  549 U.S. 118 (2007) ................................................................................ 14

*Nazomi Commc'n, Inc. v. Arm Holdings, PLC*,
  2003 U.S. Dist. LEXIS 26380 (N.D. Cal. 2003) ....................................... 1, 4

*Nazomi Commc'n, Inc. v. Arm Holdings, PLC,*
 2006 U.S. Dist. LEXIS 66354 (N.D. Cal. 2006) ................................................. 1, 4

*Nazomi Commc'n, Inc. v. Arm Holdings, PLC,*
 403 F.3d 1364 (Fed. Cir. 2005) ......................................................................... 1

*Nazomi Communs., Inc. v. Arm Holdings, PLC,*
 266 Fed. Appx. 935 (Fed. Cir. 2008) ................................................................ 1

*Nw. Forest Resource Council v. Glickman,*
 82 F.3d 825 (9th Cir. 1996) ........................................................................ 8, 9, 12

*San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist.,*
 187 F.3d 1096 (9th Cir. 1999) ......................................................................... 14

*Sierra Club v. Glickman,*
 82 F.3d 106 (5th Cir. 1996) ......................................................................... 10, 11

*Sierra Club v. United States EPA,*
 995 F.2d 1478 (9th Cir. 1993) .......................................................................... 10

*Sw. Ctr. for Biological Diversity v. Berg,*
 268 F.3d 810 (9th Cir. 2001) ..................................................................... 10, 12, 13

*Trbovich v. United Mine Workers,*
 404 U.S. 528 (1972) ..................................................................................... 11, 12

*Van Hoomissen v. Xerox Corp.,*
 497 F.2d 180, (9th Cir. 1974) .......................................................................... 14

**RULES**

Fed. R. Civ. P. 24(a) ....................................................................................... 2, 8, 13, 15
Fed. R. Civ. P. 24(b) ....................................................................................... 2, 14, 15

# PRELIMINARY STATEMENT

ARM Ltd. and ARM, Inc. (collectively, "ARM") respectfully submit this motion and brief in support of ARM's Motion to Intervene pursuant to Fed. R. Civ. P. 24 as a party-defendant in this action brought by Nazomi Communications, Inc. ("Nazomi"). On February 8, 2010, Nazomi filed the present complaint accusing companies whose products utilize a number of ARM processor cores ("ARM Products") of infringing U.S. Pat. Nos. 7,080,362 ("the "'362 patent") and 7,225,436 (the "'436 patent").

The present case is essentially a follow-on litigation to a prior lawsuit in which Nazomi directly and unsuccessfully sued ARM before Judge Fogel in the Northern District of California. *See* Case #: 5:02-cv-02521-JF (N.D. Cal.) (the "Original Litigation"). In the Original Litigation, Judge Fogel extensively evaluated the pertinent technology and twice issued claim construction rulings resulting in non-infringement judgments for the ARM Products. *See Nazomi Commc'n, Inc. v. Arm Holdings, PLC*, 2003 U.S. Dist. LEXIS 26380 (N.D. Cal. 2003); *Nazomi Commc'n, Inc. v. Arm Holdings, PLC*, 2006 U.S. Dist. LEXIS 66354 (N.D. Cal. 2006). After Judge Fogel's first ruling, the Federal Circuit returned the case to Judge Fogel for a more detailed analysis of the underlying technology. *Nazomi Commc'n, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364 (Fed. Cir. 2005). After Judge Fogel held additional proceedings and provided the detailed analysis requested by the Federal Circuit, the Federal Circuit affirmed Judge Fogel's judgment. *Nazomi Communs., Inc. v. Arm Holdings, PLC*, 266 Fed. Appx. 935 (Fed. Cir. 2008).[1]

Having unsuccessfully sued ARM, Nazomi now opts to sue third-parties who

---

[1] The Original Litigation involved U.S. Pat. No. 6,332,215 (the "'215 patent") which is an ancestor patent to both the '362 and '436 patents asserted in the present litigation. The '362 patent is a continuation of the '215 patent and appears to have an identical specification. The '436 patent is a "continuation-in-part" of the '215 patent and appears to contain most, if not all, of the same disclosure as the '215 patent including all of the figures from the '215 patent.

have little or no detailed knowledge about the underlying technology in the ARM Products incorporated into their own consumer products. By seeking a finding of infringement and an injunction against Defendants' products which utilize ARM Products, Nazomi's lawsuit requests relief that would directly impair or impede ARM's legal rights, capital investments, and business plans as they relate to ARM's ability to sell the accused products to its customers. As Nazomi identifies ARM Products as those components of the accused devices which are capable of infringement, ARM is the party-in-interest.

As explained below, ARM is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a) because it "claims an interest relating to the property or transaction that is the subject of the action" and is "so situated that the disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." *Id.* In the alternative, this Court should grant ARM permissive intervention pursuant to Fed. R. Civ. P. 24(b). Finally, this case simply cannot be resolved without ARM's involvement as ARM keeps the detailed information about the accused products highly confidential – the Defendants simply do not have the information necessary to resolve the lawsuit.

ARM's involvement does not expand this case. As reflected by Nazomi's lawsuit in the Original Litigation, ARM is simply the real party-in-interest for a subset of the products already accused by Nazomi. ARM has consulted with the existing parties. None of the Defendants oppose ARM's motion. Plaintiff Nazomi has been apprised of the motion but has not yet taken a position on the motion.

Finally, in the interests of judicial efficiency, ARM is concurrently filing a motion to transfer this case the Northern District of California where, presumably, it will be assigned to Judge Fogel. Nazomi is located in the Northern District. ARM has one of its primary U.S. facilities in the Northern District. The inventors are located in the Northern District. Much of the Java prior art is located in the Northern District. Judge Fogel held multiple claim construction proceedings on

related patents asserting infringement against the same ARM products. The Central District has no such ties to this case or the parties. This case meets all of the criteria from the Federal Circuit and Ninth Circuit for transfer. Indeed, the only apparent reason for Nazomi selecting the Central District is an apparent desire to avoid Judge Fogel and his extensive background in the relevant technology.

## BACKGROUND

### I. ARM'S ACCUSED PRODUCTS

ARM is the leading designer of processors used in cellular telephones, hand held computers and numerous other electronic products requiring low power consumption and small size. ARM processor designs are incorporated into the integrated circuits of products sold all over the world—including those of the Defendants.

ARM designs processors that can be embedded into and form a component of larger integrated circuits and licenses these processor designs to other companies that then make and sell larger integrated circuits that might be commonly referred to as processor "chips." The processor design supplied by ARM is commonly referred to as the ARM "core" or ARM "processor core." These cores are frequently known by the generation or "family" of the design. For example, the ARM9 "family" would include the ARM926EJ-S core. The newer ARM11 "family" would include cores such as the ARM1136EJ-S core.

To help maintain its competitive position, ARM invests heavily in research and development—over $100 million in the last year alone. Indeed, one of ARM's primary U.S. facilities is located in San Jose, California which employs over 160 scientists, engineers, and other technologically skilled personnel in addition to numerous sales, marketing and support personnel.

Since ARM's business depends upon the utilization of its processor cores by its customers, ARM is acutely sensitive to accusations of patent infringement. ARM's licensees/customers are justifiably concerned with allegations that their

future products might infringe a patent. Thus, it is important for ARM to eliminate promptly any cloud of uncertainty created by allegations of infringement.

## II. THE OVERLAP BETWEEN THE ORIGINAL LITIGATION AND THE EXISTING LITIGATION.

The Original Litigation involved exactly the same technology as the present litigation: processing of computer instructions written in the Java computer language. Judge Fogel provided a concise description of the relevant technology. *Nazomi Commc'n, Inc. v. Arm Holdings,* PLC, 2006 U.S. Dist. LEXIS 66354 (N.D. Cal. 2006). As described by Judge Fogel in the Original Litigation, Nazomi's patents describe a system in which Java bytecodes are converted into "native" instructions. These "native" instructions are then converted by a processor into control signals which drive the gates controlling the operation of the processors.

ARM's accused technology is known as "Jazelle." Jazelle describes a different technology in which the Java bytecodes are converted directly into the control signals – bypassing the "native" instruction step that was Nazomi's purported distinction over prior art systems. Indeed, as Judge Fogel noted:

> Plaintiff does not rely on any particular proposed construction language, in essence it is proposing a construction that would provide no basis for distinguishing the prior art.... Plaintiff has not shown, however, how picoJava or other specialized Java processors would not also infringe under such an interpretation of the claims.

*Nazomi Commc'n, Inc. v. Arm Holdings,* PLC, 2003 U.S. Dist. LEXIS 26380, *12 (N.D. Cal. 2003).

Although Nazomi has slightly altered some of the language in the claims in the '362 and '436 patents, the fundamental difference described above remains between the system described in Nazomi's patent(s) and the ARM Jazelle hardware. Thus, just as in the prior case, two of the primary issues in this case will be questions already evaluated by Judge Fogel:

- How can Nazomi extend its patents to cover systems that do not convert Java into "native" instructions when the patents do not describe any such systems?
- Even if Nazomi successfully extends its patent claims beyond the written description in its patent specification, how can Nazomi encompass Jazelle while avoiding the prior art?

These were the primary issues disputed before Judge Fogel and the exact same issues will be disputed in the present case. Nazomi's attempt to re-cast its claim language cannot escape the fundamental fact that the asserted patents only provide written description for systems that convert Java into "native" instructions—an operation that Nazomi conceded that Jazelle simply does not do. Indeed, Judge Fogel's reasoning in both prior opinions in the Original Litigation is buttressed even further by the Federal Circuit's recent en banc case confirming the patent specification must contain written description sufficient to support the asserted scope of claims. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 2010 U.S. App. LEXIS 5966 (Fed. Cir. March 22, 2010).

### III. THE DEFENDANTS LACK REQUISITE KNOWLEDGE OF THE ACCUSED JAZELLE TECHNOLOGY AND DO NOT EVEN USE THAT TECHNOLOGY AS NAZOMI KNOWS FROM THE ORIGINAL LITIGATION.

The Defendants in this case do not have the necessary knowledge or information to litigate this case. The Jazelle technology is provided by ARM to ARM's licensees as part of the processor designs that ARM licenses. ARM provides what is known as "behavioral RTL code" which describes the processor core in a manner which enables licensees to incorporate the ARM processor core in their own processor chip designs and then manufacture customer specific chips for use in specialized consumer products. These licensees include chip making companies such as Freescale, Texas Instruments, Nvidia, and Qualcomm. The licensees use the RTL code to design their own processor chips and then manufacture those chips using semiconductor fabrication techniques.

The Defendants then purchase the processor chips for incorporation into the accused consumer products from the chip-making companies. The Defendants never receive the RTL code from ARM which defines the structure and operation of the ARM Products, including the accused Jazelle technology. Graphically, this would be depicted as follows:



As shown above, at most Jazelle is a small portion of the ARM core which is a portion of a processor chip which is a small portion of the accused products. Jazelle is only used if an end-user product both: (1) processes Java software and (2) enables the Jazelle hardware which requires a special license from ARM.

As Nazomi knows, many (if not all) of the accused Defendants' products <u>do not even operate Java</u>. Nazomi carefully worded its Complaint to allege only that each accused Defendants' product "incorporates an ARM[] processor core *capable of* Java hardware acceleration." Complaint at ¶¶ 22, 23, 24, 25, 26, 27, 28, 29, 30 (emphasis added). Notably, Nazomi never alleges that any of the accused products actually either (1) process Java or (2) do Java hardware acceleration using the Jazelle hardware.

Nazomi appears to be trying to assert that, even if the Defendants' products do not actually use Java (or hardware acceleration), the mere (unused) existence of Jazelle in the accused ARM cores in the Defendants' products is sufficient to find infringement. However, as explained by ARM to Nazomi in detail in the prior case, even if a processor contains semiconductor gates related to Jazelle functionality, that Jazelle functionality is only enabled by separately licensed software:

> 16. For the Jazelle portion of an ARM processor to operate, the hardware must be enabled using a software package called the Java Technology Enabling Kit ("JTEK"). JTEK must be licensed from ARM separately from the processor design in order to use it to enable the Jazelle portion of an ARM processor. ARM keeps secret the complicated steps that must be taken to enable the Jazelle portion of its processors. ARM discloses those steps only to licensees who have separately licensed JTEK.

Case #: 5:02-cv-02521-JF (N.D. Cal.), Declaration of Stephen Steele, Dkt. # 36 (attached hereto as Exhibit 1 to the accompanying Newhouse Declaration in support of ARM's motion to intervene).

Given that most (or all) of the Defendants' accused products do not execute Java at all—much less use Jazelle to execute Java—it is unsurprising that the Defendants do not have sufficiently detailed information to evaluate and defend this case. ARM's participation is therefore both necessary and desirable.

# ARGUMENT

## I. ARM SHOULD BE ALLOWED TO INTERVENE AS OF RIGHT PURSUANT TO FED. R. CIV. P. 24(A).

Because Nazomi's claims for relief threaten both ARM's specific products and its substantial capital investment and business plans in the provision of processor cores to other customers, and because ARM Products are specifically targeted by Nazomi's Complaint, ARM submits that it is entitled to intervene as a matter of right.[2]

The Ninth Circuit has adopted a four-part test to determine if intervention of right is warranted: An applicant must demonstrate that (1) the intervention is timely; (2) the applicant has a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *See Gonzalez v. Arizona*, 485 F.3d 1041, 1151 (9th Cir. 2007). Rule 24 is construed liberally in favor of potential intervenors, and a district court accepts as true the non-conclusory allegations made in support of an intervention motion. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006).

ARM easily satisfies these four requirements.

### A. ARM'S MOTION FOR INTERVENTION IS TIMELY.

ARM's motion to intervene is indisputably timely. ARM's present motion is filed before any hearings or status conferences in the case. Existing parties are not prejudiced when "the motion was filed before the district court made any substantive rulings." *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 837

---

[2] *See* Fed. R. Civ. P. 24(a) ("On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.").

(9th Cir. 1996). "Here, no substantive rulings have been made in this case, no scheduling conference has been held, and no discovery has commenced." *Coalition for a Sustainable Delta v. Carlson*, 2008 U.S. Dist. Lexis 42629, *10 (E.D. Cal. 2008).

No party will be prejudiced by permitting ARM to intervene. ARM has moved to intervene prior to any significant proceedings in the case. The timing of ARM's motion will thus cause no prejudice whatsoever to Nazomi.

By contrast, ARM is threatened with substantial prejudice if its motion is denied. If Nazomi is successful in obtaining a declaration from this Court that the chips containing the accused ARM Products are infringing, ARM would suffer significant impact to its business. Accordingly, ARM's motion is timely.

**B.   ARM HAS AN INTEREST IN THE SUBJECT MATTER OF THIS PROCEEDING.**

An applicant has a significantly protectable interest in an action if (1) the applicant asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims. *Lockyer*, 450 F.3d at 441; *Donnelly v. Glickman*, 159 F.3d 405, 409-10 (9th Cir. 1998). ARM obviously has a direct and substantial interest in this litigation. Nazomi has accused ARM's products of infringing Nazomi's patent. ARM's ability to supply products to its customers is directly threatened by Nazomi's Complaint, which seeks a declaration that Defendants' products are infringing because of their inclusion of certain specifically identified ARM processor cores. Moreover, the Original Litigation also establishes that Nazomi intends to threaten ARM's interests.

As the Ninth Circuit has observed, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1496 (9th Cir. 1995). Whether an

applicant for intervention demonstrates sufficient interest in an action "is a practical, threshold inquiry." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). "No specific legal or equitable interest need be established." *Id.* (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)). It is generally enough that the interest asserted "is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club v. United States EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)).

ARM's present position is clearly aligned with those situations in which other districts have found intervention to be appropriate:

> The motion to intervene filed by [a proposed intervenor] will also be granted, because it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product. [The proposed intervenor] correctly claims that it has met the test for intervention as of right under Rule 24(a). Its motion is timely; discovery has not even begun in the case and case management issues are only now being addressed. It has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest. It can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known. Finally, because it is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation.

*Honeywell Int'l Inc. v. Audiovox Comms. Corp.*, 2005 U.S. Dist. LEXIS 22933, *12-13 (D. Del. 2005); *see also LG Elecs., Inc. v. Q-Lity Computer, Inc. v. Asustek Computer, Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002) (permitting intervention where

plaintiff's "patent infringement contentions" identified intervenor's products sold to existing defendant as an infringing product).

> [An intervenor] has more than a speculative economic interest, as the products that it sells will be at the heart of the litigation .... As [the intervenor] sells the computers that [the plaintiff] alleges infringe its patents, there can be no question that [the intervenor] has a legally protectable interest in the products that [the plaintiff] seeks to place at issue in this patent infringement action. An applicant demonstrates a significantly protectable interest when the injunctive relief sought by the plaintiffs will have direct, immediate and harmful effects upon its legally protectable interests.

*LG Elecs.*, 211 F.R.D. at 364-65.

### C. THE COURT'S DECISION IN THIS CASE MAY IMPAIR OR IMPEDE ARM'S ABILITY TO PROTECT ITS INTERESTS.

Applying the third prong of the intervention-as-of-right test, there is no question that a judgment finding ARM Products as the basis for Nazomi's assertions of infringement "may, as a practical matter, impair or impede" ARM's interest if intervention is not allowed. *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996). While formal collateral estoppel and res judicata of an adverse decision would not apply against ARM, Nazomi would undoubtedly attempt to use such results both in future licensing negotiations and litigation against other ARM licensees, thus severely impairing ARM's ability to license its products without ARM ever having its "fair day in court." ARM therefore easily satisfies the third requirement for intervention as of right. *See LG Elecs.*, 211 F.R.D. at 364-65.

### D. THE OTHER DEFENDANTS CANNOT ADEQUATELY PROTECT ARM'S INTERESTS.

Finally, ARM easily satisfies the minimal burden of showing "that [its] interest [is] inadequately represented by the existing parties." *Trbovich v. United*

*Mine Workers*, 404 U.S. 528, 538 n.10 (1972). In determining whether a would-be intervenor's interests will be adequately represented by an existing party, the Court considers: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)). The burden of showing inadequacy is minimal, and the applicant need only show that representation of its interests by existing parties might be inadequate. 268 F.3d at 823; *see also Trbovich*, 404 U.S. at 538, n.10 (a proposed intervenor need only establish that "representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.")

As its Complaint makes clear, Nazomi's interests are squarely adverse to ARM's interests. Moreover, the necessarily technical information to defend the case is solely in ARM's possession – not that of the Defendants. As discussed above, the existing Defendants do not have access to RTL code which defines the accused Jazelle product within the ARM cores that are within the processors chips used in the Defendants' processors.

In addition, certain infringement defenses may be available to ARM's products that are not available (or not available to the same degree) to other Defendants. ARM's cores are based on long-known technology that pre-dates the asserted patents. Selection of non-infringement and invalidity theories could clearly differ between the various accused products. Absent intervention, ARM would be at the mercy of the present Defendants to present theories favorable to ARM. Since those theories may, in fact, be unfavorable to the present Defendants, it is clear that representation by the existing parties may be inadequate. Indeed, when different defenses may be available, Federal Circuit precedent requires

granting permission to intervene. *See Israel Bio-Engineering Project v. Amgen, Inc.*, 401 F.3d 1299, 1306 (Fed. Cir. 2005) (reversing the district court's denial of a Rule 24 motion to intervene where the intervening party had a defense not available to other defendants).

Additionally, ARM's financial interests are clearly different from the existing parties. For example, at some point in the litigation, one of the Defendants might be forced to make the business decision to settle even though it continues to believe that the accused products do not infringe and/or that the asserted patent claims are invalid or unenforceable. While such a settlement decision might be rational when considering that Defendant's business, such settlement might be completely irrational when considering ARM's business interests. Given this indisputable conflict, ARM has the need and right to be heard in its own name.

In addition, ARM brings to this litigation knowledge gleaned not only through worldwide experience, but also by way of developing sophisticated cores for many, many years. ARM's primary business is processor core designs – not consumer products as is the case with the Defendants. Thus, ARM has a unique perspective on the technical nuances of both the ARM Products and the prior art. ARM will apparently be combating Nazomi's infringement accusations with many customers in the Nazomi Lawsuits and ARM has particular expertise in the factual and technical issues raised by the Nazomi's accusations. Therefore, ARM brings important expertise and perspective to the issues presented. *See, e.g., Sw. Ctr. For Biological Diversity*, 268 F.3d at 823 (noting that intervention as of right was appropriate so that the party could "express their own unique private perspectives" in the litigation).

Because ARM satisfies all four prongs of the Ninth Circuit test, ARM is entitled to intervention as of right under Fed. R. Civ. P. 24(a).

## II. IN THE ALTERNATIVE, ARM SATISFIES ALL OF THE REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER FED. R. CIV. P. 24(B).

In the alternative, if the Court does not find that ARM is entitled to intervention as of right, ARM easily satisfies the more liberal standard for permissive intervention. Permissive intervention is allowed when (1) the applicant's motion to intervene is timely, (2) the applicant's claim or defense and the main action have questions of law or fact in common, and (3) the intervention will not cause undue delay or prejudice the rights of individual parties. Fed. R. Civ. P. 24(b).

The Ninth Circuit has identified three necessary prerequisites: (1) the applicant must show independent grounds for jurisdiction; (2) the motion must be timely; and (3) the applicant's claim or defense, and the main action, must have a question of law or a question of fact in common. *See San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist.*, 187 F.3d 1096, 1100 (9th Cir. 1999); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). A district court's discretion to grant or deny permissive intervention is broad, and includes the discretion to limit intervention to particular issues or for limited purposes. *See San Jose Mercury News*, 187 F.3d at 1100; *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974).

As an initial matter, ARM has demonstrated an independent ground for jurisdiction by meeting the standard which would be required for the filing of a declaratory judgment action if ARM had elected to do so. Nazomi's actions more than meet the standard recently established by the Supreme Court. *MedImmune Inc. v. Genentech Inc.*, 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007). In *MedImmune*, the Supreme Court stated that a justiciable declaratory judgment action exists when, "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of

sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 771 (citation omitted). Nazomi's lawsuits specifically identifying chips containing ARM cores as infringing products fully establishes declaratory judgment jurisdiction.

Here, ARM's request is indisputably timely and Nazomi's infringement allegations presumably depend primarily on claim construction which would be common to all accused products. Intervention will conserve judicial resources and allow for the efficient resolution of all related issues in a single proceeding rather than forcing ARM to defend itself in an apparently never-ending set of Nazomi attempts to litigation against ARM by proxy. In addition, intervention will neither cause undue delay nor prejudice the rights of either Nazomi or the Defendants. Accordingly, while ARM is plainly entitled to intervention as of right, ARM also satisfies the requirements for permissive intervention under Fed. R. Civ. P. 24(b)..

## CONCLUSION

For the foregoing reasons, ARM respectfully requests that the Court grant ARM's Motion to Intervene and (1) allow ARM to intervene as of right pursuant to Fed. R. Civ. P. 24(a); or (2) in the alternative, grant ARM permissive intervention pursuant to Fed. R. Civ. P. 24(b).

Dated: April 26, 2010

Respectfully submitted,

BROWN WHITE & NEWHOUSE, LLP

_/s/ George B. Newhouse, Jr._
GEORGE B. NEWHOUSE, JR.
SYDNEY M. MEHRINGER

Attorneys for ARM LTD. and ARM, Inc.