1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
Thomas J. Friel, Jr. (CA BAR NO. 80065)
tfriel@cooley.com
Erica C. Tierney (CA BAR NO. 253557)
etierney@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:  (650) 843-5000
Facsimile:    (650) 857-0663

James P. Brogan (CA BAR NO. 155906)
jbrogan@cooley.com
Wayne O. Stacy (CO BAR NO. 32716)
wstacy@cooley.com
Sarah Guske (CA BAR NO. 232467)
sguske@cooley.com
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone:  (720) 566-4000
Facsimile:    (720) 566-4099

Attorneys for Plaintiff
NAZOMI COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nazomi Communications, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Nokia Corporation, Nokia Inc., Microsoft Corporation, Amazon.com, Inc., Western Digital Corporation, Western Digital Technologies, Inc., Garmin Ltd., Garmin Corporation, Garmin International, Inc., Garmin USA, Inc., Sling Media, Inc., VIZIO, Inc., Iomega Corporation,<br><br>Defendants. | Case No. SACV10-151 DOC (RNBx)<br><br>The Hon. David O. Carter<br><br>**PLAINTIFF NAZOMI COMMUNICATIONS, INC.'S OPPOSITION TO PROPOSED INTERVENORS-DEFENDANTS ARM, LTD. AND ARM, INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) AND TO GARMIN'S JOINDER IN ARM'S MOTION**<br><br>Date:          June 7, 2010<br>Time:          8:30 a.m.<br>Courtroom:    9D<br><br>**JURY TRIAL DEMANDED** |

Nazomi vs. Nokia, et al.
Case No. 8:10-cv-00151

1.

NAZOMI'S OPPOSITION TO ARM'S
MOTION TO TRANSFER AND TO
GARMIN'S JOINDER IN MOTION

# Table of Contents

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    FACTUAL BACKGROUND .............................................................. 3

       A.    Previous Litigation Between Nazomi and ARM ...................... 3

       B.    Evidence and Fact Witnesses Located in the Central District ............ 6

III.   LEGAL STANDARD ......................................................................... 7

IV.    ARGUMENTS ................................................................................... 9

       A.    By Attempting to Intervene in THIS Court, ARM Waived Its
             Objections to Venue .................................................................. 9

       B.    Judge Fogel's Previous Experience with a Related Patent Does
             Not Favor the Northern District of California ........................... 9

       C.    ARM Failed to Show Inconvenience Sufficient to Justify
             Transfer. ................................................................................ 12

             1.    Defendants' Extensive Ties to the Central District of
                   California Weigh Against Transfer .................................. 13

             2.    Nazomi's Location and the Location of Its Witnesses Are
                   Irrelevant to the Determination of Convenience ............. 14

             3.    The Claimed "Location" of ARM, Its Evidence, and Its
                   Witnesses Is Not Compelling .......................................... 15

             4.    ARM's Speculative Predictions of the Location of Third
                   Party Evidence and Witnesses Lack Any Merit. ............. 16

       D.    Balance of Relevant Public Interest Factors Weighs Strongly
             Against Transfer ..................................................................... 18

             1.    Administrative Difficulties Flowing from Court
                   Congestion Is a Neutral Factor ....................................... 18

             2.    Local Interest in the Outcome of this Dispute Weighs
                   Strongly Against Transfer ............................................... 18

             3.    ARM Has Failed to Show that Consistency in Rulings and
                   Application of Law Heavily Favor Transfer .................... 18

V.     CONCLUSION ............................................................................... 19

# Table of Authorities

**Page(s)**

CASES

*Acer, Inc. v. Tech. Props. Ltd. et al.*, Nos. C 08-877 JF (HRL), C 08-882,
2009 LEXIS 80001, at *7 (N.D. Cal. Feb. 4, 2009) ................................... 10, 12

*Allstar Mktg. Group LLC v. Your Store Online, LLC,*
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ...................................................... 8, 12

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.,*
No. C 06-2469 CW, 2006 U.S. Dist. LEXIS 75339 (N.D. Cal. Oct. 6,
2006) ...................................................................................................................... 8

*Asbury Glen/Summit Ltd. P'ship v. Se. Mortgage Co.,*
776 F. Supp. 1093 (W.D.N.C. 1991) ............................................................ 7, 9

*Barr v. Nat'l R.R. Passenger Corp.,*
2009 WL 3497776 (E.D. PA. Oct. 28, 2009) ........................................ 9, 14, 16

*Beam Laser Sys. v. Cox Communs., Inc.,*
117 F. Supp. 2d 515 (E.D. Va. 2000)............................................................ 7, 9

*Codex Corp. v. Milgo Elec. Corp.,*
553 F.2d 735, 194 U.S.P.Q. 49 (1st Cir. 1977) ............................................... 12

*Commonwealth Edison Co. v. Train,*
71 F.R.D. 391 (N.D. Ill. 1976)....................................................................... 7, 9

*ConnecTEL, LLC v. Cisco Sys., Inc.,*
No. 2:04-CV-396, 2005 WL 366966 (E.D. Tex. Feb. 16, 2005) .......... 10, 11, 12

*Decker Coal Co. v. Commonwealth Coal Co.,*
805 F.2d 834 (9th Cir. 1986) ............................................................... 8,  13, 18

*Effron v. Sun Line Cruises, Inc.,*
67 F.3d 7, 1996 A.M.C. 253 (2d Cir. 1995) ..................................................... 16

*Furmanite Am., Inc. v. Durango Assocs., Inc.,*
662 F.Supp. 348, 1 U.S.P.Q.2d 1999 (E.D. Va. 1986) ..................................... 12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Table of Authorities**
(continued)

Page

*Gen. Retirement Sys. of the City of Detroit v. The Wells Fargo Mortgage Backed Secs. 2006-AR18 Trust*,
  2009 WL 2137094 (N.D. Cal. Sept 5, 2007) ................................................... 16

*Heller Fin'l, Inc. v. Midwhey Powder Co.*,
  883 F.2d 1286 (7th Cir. 1989) ................................................ 15, 17

*In re Horseshoe Entm't*,
  337 F.3d 429 (5th Cir. 2003) .......................................... 14

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ......................................... 8, 13

*Medimmune, LLC v. PDL Biopharma, Inc.*,
  No. C 08-5590 JF (HRL), 2009 WL 1011519 (N.D. Cal. April 14, 2009) . 10, 11

*Metz v. U.S. Life Ins. Co.*, 2009, LEXIS 126876, at *18 (C.D. Cal. Dec. 19, 2009) .................................................................. 8

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
  518 F.3d 897, 86 U.S.P.Q.2d 1038 (Fed. Cir. 2008) ........................................ 10

*Microprocessor Enhancement Corp., et. al. v. Mindspeed Techs., Inc.*,
  Case No. 2:09-cv-00603-SVW-RNB ................................................ 16

*Microprocessor Enhancement Corp. et al v. STMicroelectronics N. V. et al.*,
  Case No. 8:08-cv-01039-SVW-RNB ................................................ 16

*Microprocessor Enhancement Corp. et. al. v. Texas Instruments Inc.*,
  Case No. 8:08-cv-01123-SVW-RNB ................................................ 16

*Mohamed v. Mazda Motor Corp.*,
  90 F.Supp.2d 757 (E.D. Tex. 2000) ................................................ 9

*Nazomi Commc'n, Inc. v. Arm Holdings, PLC*
  2003 U.S. Dist. LEXIS 26380 (N.D. Cal. 2003) ........................................ 3, 10

*Nazomi Commc'n, Inc. v. Arm Holdings, PLC*,
  2006 U.S. Dist. LEXIS 66354 (N.D. Cal. 2006) ................................. 3

**Table of Authorities**
**(continued)**

Page

*Nazomi Commc'ns., Inc. v. Arm Holdings*, *PLC,*
   266 Fed. Appx 935 (Fed. Cir. 2008) .................................................................. 5

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC,*
   403 F.3d 1364, 74 U.S.P.Q.2d 1458 (Fed. Cir. 2005) .................................. 4, 10

*Semiconductor Energy Lab.. Co., Ltd. v. Samsung Elecs. Co. Ltd.,*
   No. 09-cv-1-BBC, 2009 WL 1615528 (W.D. Wis. June 9, 2009) .................... 12

*Stewart Org. v. Ricoh Corp.,*
   487 U.S. 22, 108 S.Ct. 2239 (1988) .................................................................. 7

*Szegedy v. Keystone Food Prod., Inc.,*
   2009 U.S. Dist. LEXIS 83444 (C.D. Cal. Aug. 26, 2009) ................................ 8

STATUTES

28 U.S.C. § 1404(a) ................................................................................... 1, 7, 13

Federal Rules of Civil Procedure
   24 ........................................................................................................................ 4
   45(b)(2)(C) ....................................................................................................... 17

Local Rule 7-3 ....................................................................................................... 1

OTHER AUTHORITIES

17 *Moore's Federal Practice,*
   § 24.22 (Matthew Bender 3d ed.) .................................................................. 7, 9

1   Plaintiff, Nazomi Communications, Inc., ("Nazomi") respectfully opposes
2   Proposed Intervenors, ARM, Ltd., and ARM, Inc.'s (collectively "ARM") motion
3   to transfer pursuant to 28 U.S.C. § 1404(a) ("Motion") and Defendants Garmin
4   Ltd., Garmin Corporation, Garmin International, Inc., and Garmin USA, Inc.'s
5   (collectively "Garmin" or the "Garmin defendants") Joinder[1] in the Motion
6   ("Garmin Joinder").

7   **I.    INTRODUCTION**

8   ARM filed this Motion seeking an intra-California transfer of venue pursuant
9   to 28 U.S.C. § 1404(a) in conjunction with its motion to intervene on April 27,
10  2010.  Nazomi opposes this Motion.  Nazomi also opposes ARM's underlying
11  motion to intervene in a separate but related filing.

12  ARM, at the same time requesting permission to intervene, pleads its
13  dissatisfaction with this Court and requests transfer to Northern California.  Some
14  might call this request chutzpa, others might call it forum shopping.

15  The apparent motivation for ARM's Motion is selection of Judge Fogel, a
16  judge who twice ruled in ARM's favor in a prior case decided years ago on a very
17  limited record – a *Markman* ruling on the single term "instruction" from a patent
18  not asserted here.

19  ARM's argument assumes that Judge Fogel will be assigned to any
20  transferred case.  In fact, the case will be assigned at random to any one of the
21  Northern District's 29 judges and magistrate judges.  Thus, the odds are low that
22  the case will be assigned to Judge Fogel.  ARM simply fails to make any showing
23  that following transfer, this case absolutely will be assigned to Judge Fogel.

24

---

25  [1] The Garmin defendants filed their joinder motion on May 10, 2010 without first
    meeting-and-conferring with Nazomi's counsel and without allowing sufficient
26  time before Nazomi's opposition brief was due, as required by Local Rule 7-3.  The
    Garmin Joinder advanced arguments in addition to those advanced in ARM's
27  Motion.  For simplicity, Nazomi's responses to ARM's arguments apply equally to
    Garmin's joinder in those arguments.   To the extent that Garmin advanced
28  additional arguments, Nazomi also responds to those independently.

NAZOMI'S OPPOSITION TO ARM'S
                                                                          MOTION TO TRANSFER AND TO
                                                                          GARMIN'S JOINDER IN MOTION

1       ARM's argument also *assumes* that Judge Fogel has "familiarity with this

2   case."  In the rush to advocate for Judge Fogel, ARM gilds the lily as to that court's

3   involvement in the prior case.  ARM proclaims "compelling and unique reasons to

4   transfer" as this suit is "essentially a continuation of a prior suit."  The facts?  Judge

5   Fogel ruled on only one out of more than fifty contested claim terms (the term was

6   "instruction"), from a different patent, involving different products, involving

7   different parties.  The only contested ruling was as to the meaning of "instruction;"

8   based on Judge Fogel's construction, summary judgment and judgment were

9   stipulated and not contested.  There were no evidentiary hearings.  There were no

10  trials.  There were only two hearings; both *Markman* hearings.  The technology

11  tutorial was in 2003, about old generation designs.  The last *Markman* hearing (or

12  hearing of any kind) was October 11, 2005.  The latest contested hearing, the

13  *Markman* on remand as to the term "instruction," was October 6, 2006.  The

14  uncontested summary judgment order was in January 2007.  Judge Fogel's law

15  clerks from that era are long gone.  Common experience and common sense suggest

16  memories have long ago faded.

17      ARM also ignores the manifest differences between the case Judge Fogel

18  decided and this case:  remote in time, different patents, different parties, and

19  different accused products.

20      ARM's Motion equates Judge Fogel's judicial experience to the relevant

21  factor of judicial economy.  First, "judicial experience" is not itself a transfer factor.

22  While co-pending cases would be relevant to judicial economy, that is certainly not

23  the case here.  The last hearing in the prior case was in 2005 and the case was over

24  in January 2007.  Second, judicial experience is judge-by-judge.  As noted, ARM

25  offers no assurance Judge Fogel would hear this case if transferred to Northern

26  California.  Third, common sense and common experience teach that some judicial

27  familiarity with a patent some years ago (and the last hearing was nearly five years

28  ago, and was limited to determining the meaning of a single claim term on remand)

1   says little about judicial economy as to a suit involving different patents, different

2   parties, different products, different prior art, and years later.  Thus, the "judicial

3   experience" here, such as it was, does not "compellingly" or "uniquely" imply or

4   equate to "judicial economy."

5       In short, where are the "compelling and unique reasons to transfer" ARM

6   promises?  ARM provides no justification for granting it an exception to precedent

7   prohibiting intervening defendants from requesting venue transfers.   Even if

8   proposed intervenor ARM were granted an exception from this rule, ARM has not

9   demonstrated that intra-California transfer from the Central District to the Northern

10  District is warranted, or is anything other than forum shopping.

11  **II.   FACTUAL BACKGROUND**

12      On February 8, 2010, Nazomi filed its Complaint for Patent Infringement

13  against Nokia Corporation, Nokia, Inc., Microsoft Corporation, Amazon.com, Inc.,

14  Western Digital Corporation, Western Digital Technologies, Inc., Garmin Ltd.,

15  Garmin Corporation, Garmin International, Inc., Garmin USA, Inc., Sling Media,

16  Inc., Vizio, Inc., and Iomega Corporation (collectively "Defendants").  (Compl. at

17  1).  The Complaint alleges that each of the Defendants' consumer products infringe

18  two Nazomi patents:

19      • U.S. Patent No. 7,080,362 ("the '362 patent") and,

20      • U.S. Patent No. 7,225,436 ("the '436 patent").

21  (Compl. at 4-6.)

22      **A.   Previous Litigation Between Nazomi and ARM.**

23      In 2002, Nazomi litigated a different patent, U.S. Patent No. 6,332,215 ("the

24  '215 patent), against ARM Holdings, PLC, ARM Limited, and ARM, Inc.

25  (collectively "ARM") in the Northern District of California.  *See Nazomi Commc'n,*

26  *Inc. v. Arm Holdings, PLC* 2003 U.S. Dist. LEXIS 26380 (N.D. Cal. 2003); *Nazomi*

27  *Commc'n, Inc. v. Arm Holdings, PLC,* 2006 U.S. Dist. LEXIS 66354 (N.D. Cal.

28  2006).

1   Although the '215 patent belongs to the same family as the patents-in-suit, the

2   substantive issues addressed by the court in the previous suit against ARM were

3   extremely limited.  While the court held a *Markman* hearing on April 28, 2003, no

4   claim construction ruling was ever issued on the disputed over sixty (60) claim

5   terms, except for single term "instruction."  (*See* Ex. A to Declaration of Erica C.

6   Tierney In Support of Plaintiff Nazomi Communications, Inc.'s Opposition to

7   Proposed Defendants-Intervenors ARM Ltd., and ARM, Inc.'s Motion to Intervene

8   Pursuant to Fed. R. Civ. P. 24 and to Garmin's Joiner in ARM's Motion ("Tierney

9   Decl."), at Dkt. Entries 71, 145).

10        On September 30, 2003, the court granted partial summary judgment of non-

11   infringement based solely on the court's construction of a single term, "instruction,"

12   and the plaintiff's stipulation that it could not prove infringement based on that

13   construction.  (*See* Ex. A to Tierney Decl., at Dkt. Entry 179).  No other issues of

14   claim construction or summary judgment were ever considered or decided.

15        Following a stipulated dismissal based on the court's limited decision as to

16   construction of the single term "instruction" and stipulated summary judgment,

17   Nazomi appealed to the Federal Circuit. (Ex. A to Tierney Decl., at Dkt. Entries

18   184, 185, 186).  On appeal, the Federal Circuit vacated and remanded the trial

19   court's holding finding that the lower court's claim construction analysis and the

20   infringement analysis were inadequate.  *See Nazomi Commc'ns, Inc. v. Arm*

21   *Holdings, PLC,* 403 F.3d 1364, 74 U.S.P.Q.2d 1458  (Fed. Cir. 2005).

22        On remand, both parties submitted supplemental claim construction briefings

23   on the single term "instruction."  (*See* Ex. A to Tierney Decl., at Dkt. Entries 218,

24   221, 223).  The court issued an order construing the term "instruction" exactly as it

25   had before the appeal.  (*See id.* at Dkt. Entry 242).  Once again, based on the court's

26   construction of the single term, Nazomi acknowledged non-infringement to appeal

27   the same construction of "instruction."  (*See id.* at Dkt. Entry 259 at 2-3).  The court

28

1   issued the following order without conducting any analysis of the underlying
2   evidence:

3          Defendants move for summary judgment of non-infringement.  Plaintiff concedes that
4   Defendants' Jazelle Revision 3 (and higher) products do not infringe the patent under this
5   Court's construction of the term "instruction" as set forth in the order of September 6, 2006.
6   Plaintiff requests that the Court enter judgment of noninfringement for Defendants so that
    Plaintiff may proceed with an appeal, which will include an appeal of this Court's construction of
7   the term "instruction."

8          Accordingly, Defendants' motion for summary judgment of non-infringement is
    GRANTED.
9

10  (*Id.*, at Dkt. Entry 261).  This time the Federal Circuit affirmed the trial court's
11  judgment.  *Nazomi Commc'ns., Inc. v. Arm Holdings*, *PLC*, 266 Fed. Appx 935
12  (Fed. Cir. 2008).

13        There were no further appeals, and the 2007 judgment by stipulation was
14  affirmed.  In total, there were only two hearings, both *Markman* hearings, and there
15  was never a trial.

16        The docket entries cited by ARM also do not support ARM's contention that
17  Fogel "considered virtually every possible aspect of the asserted patent family," and
18  "resolved numerous discovery disputes."   (Motion at 5).   For example, docket
19  entries 94 and 99 relate to objections to deposition corrections, and  docket entries
20  149-152, 158, 159, 162 and 178 were decided by the magistrate—not Judge Fogel.

21        The '215 patent will not be litigated in this case, as the Federal Circuit has
22  ruled.   The accused products are different.   The parties are different.   Nazomi
23  accuses *defendants'* products of infringing the '436 and '362 patents.

24        The claims at issue in this case are distinct from the claims of the '215 patent
25  that were asserted against ARM in the previous suit.   ARM argues that  the "new
26  claim" (sic) is "virtually identical" to the primary claim litigated in the previous
27  suit; however, ARM failed to actually submit any chart proving the identical nature

28

1     of the many claims asserted here.  (Motion at 5).  Further, the Patent Office agreed

2     that the claims of the '362 and '436 patents were different from the '215 patent

3     when it granted the '362 and '436 patents.  (*See* Exs. B and C to Tierney Decl.).

4         With these facts, this Court can better evaluate ARM's representations in this

5     Motion including:  (1) that the same issues were *"extensively litigated"* in the prior

6     suit against ARM, (2) that the judge in the previous suit conducted an *extensive*

7     *evaluation of the same issues*, and (3) that there is *substantial overlap* with the

8     previous litigation.

9        **B.     Evidence and Fact Witnesses Located in the Central District.**

10        Two defendant groups are headquartered in the Central District (Western

11     Digital and Vizio).  Five of the seven defendant groups have facilities in this

12     District.  Thus evidence and fact witnesses are likely within this District:

13     •   Western Digital is headquartered in Lake Forest.  (Ex. D to Tierney Decl.).

14     •   Vizio is headquartered in Irvine. (Ex. E to Tierney Decl.).

15     •   Nokia has five offices in the Central District –three in Calabasas, and two in

16        Santa Monica.( Ex. F to Tierney Decl.).

17     •   Microsoft has two sales office in the Central District –one located in Irvine

18        and one located in Los Angeles.  Microsoft also has a retail store in Mission

19        Viejo.  (Ex. G to Tierney Decl.).

20     •   Amazon.Com  has several offices in the Central District including offices

21        located in Los Angeles, Lake Forest, and Orange County.  (Ex. H to Tierney

22        Decl.).

23     •   Garmin has a facility in Los Angeles. (Ex. I to Tierney Decl.).

24     •   Iomega is a wholly-owned subsidiary of EMC Corporation, which has

25        facilities in El Segundo. Irvine, Long Beach, Los Angeles, and Pasadena.

26        (Ex. J to Tierney Decl.)  Iomega Corporation is headquartered in San Diego.

27        (Ex. K to Tierney Decl.).

28

**Nazomi vs. Nokia, et al.**
**Case No. 8:10-cv-00151**       6       **NAZOMI'S OPPOSITION TO ARM'S**
**MOTION TO TRANSFER AND**
**GARMIN'S JOINDER IN MOTION**

1    Each Defendant, except Sling Media, has litigated patent cases in the Central
2    District of California.  (Ex. L to Tierney Decl.) .

3    Garmin and Vizio have no known physical presence in the Northern District
4    of California, which Garmin admits.  (D.I. 67 at 3;  Ex. E to Tierney Decl.)

5    **III.    LEGAL STANDARD**

6    Common sense considerations bar ARM's Motion.   Intervenors are not
7    permitted to seek venue transfers because they are deemed to have waived the
8    privilege to contest the forum.  *Beam Laser Sys. v. Cox Communs., Inc.*, 117 F.
9    Supp. 2d 515, 518 (E.D. Va. 2000); *Asbury Glen/Summit Ltd. P'ship v. Se.*
10   *Mortgage Co.*, 776 F. Supp. 1093, 1096 (W.D.N.C. 1991) (stating that as a general
11   matter an intervenor cannot question venue).  "The purpose of venue is to alleviate
12   the hardship on a defendant arising from his being forced to defend a suit in an
13   inconvenient forum.   Such a consideration does not apply to an intervenor."
14   *Commonwealth Edison Co. v. Train,*  71 F.R.D. 391, 394 (N.D. Ill. 1976) (denying
15   intervenor's motion to transfer venue where the intervenor enters an action "subject
16   to the venue which already exists").  *See also,* 17 *Moore's Federal Practice*, §
17   24.22 (Matthew Bender 3d ed.) ("A person who intervenes as plaintiff or defendant
18   may not object to the venue chosen for the action.  Since the intervenor specifically
19   invoked the jurisdiction of the court, any potential venue objections are considered
20   waived.")

21   Section 1404(a) provides that "[f]or the convenience of parties and witnesses,
22   in the interest of justice, a district court may transfer any civil action to any other
23   district or division where it might have been brought."   The district court has
24   discretion, under § 1404(a), "to adjudicate motions for transfer according to 'an
25   individualized, case-by-case consideration of convenience and fairness.'"  *Stewart*
26   *Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988) (citation
27   omitted).

28

1   In determining whether transfer is appropriate in a particular case, the Ninth

2   Circuit in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)

3   laid out the factors to be considered by the court.   ARM agrees that some of the

4   private factors do not apply; thus relevant factors on which ARM bears the burden

5   are:  (1) plaintiff's choice of forum, (2) respective parties' contacts with the forum,

6   (3) contacts relating to the plaintiff's cause of action in the chosen forum,

7   (4) differences in the costs of litigation in the forums, (5) availability of compulsory

8   process to compel attendance of unwilling non-party witnesses, and (6) ease of

9   access to proof.  *Jones*, 211 F.3d at 498-99; (Motion at n.3).

10   Relevant public factors on which ARM again bears the burden include

11   administrative difficulties flowing from court congestion, local public interest in the

12   outcome of a case, avoidance of conflict of law issues, and the unfairness of

13   burdening citizens in an unrelated forum with jury duty.  *See Decker Coal Co. v.*

14   *Commonwealth Coal Co.,* 805 F.2d 834, 843 (9th Cir. 1986) (internal citations

15   omitted).

16   Again, the party seeking transfer bears the burden of establishing that a

17   transfer is warranted.  *Allstar Mktg. Group LLC v. Your Store Online, LLC,* 666 F.

18   Supp. 2d 1109, 1131 (C.D. Cal. 2009) ; *see also, Decker,* 805 F.2d at 843**.**

19   In determining inconvenience to witnesses, courts accord "less weight to the

20   inconvenience of *party* witnesses … [where] they can be compelled to testify

21   regardless of the forum in which the lawsuit is ultimately litigated." *Allstar Mktg.*

22   *Group*, 666 F. Supp. 2d at 1132;  *see also*, *e.g.*, *Applied Elastomerics, Inc. v. Z-Man*

23   *Fishing Prods., Inc.*, No. C 06-2469 CW, 2006 U.S. Dist. LEXIS 75339,  at *4

24   (N.D. Cal. Oct. 6, 2006).

25   Similarly, "ease of access to documents does not weigh heavily in the

26   transfer analysis, given that advances in technology have made it easy for

27   documents to be transferred to different locations." *Metz v. U.S. Life Ins. Co.*, 2009

28   LEXIS 126876, at *18 (C.D. Cal. Dec. 19, 2009) (quoting *Szegedy v. Keystone*

Nazomi vs. Nokia, et al.
Case No. 8:10-cv-00151                    8

NAZOMI'S OPPOSITION TO ARM'S
MOTION TO TRANSFER AND
GARMIN'S JOINDER IN MOTION

*Food Prod., Inc.,* 2009 U.S. Dist. LEXIS 83444, at *6 (C.D. Cal. Aug. 26, 2009); *see also, Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 778 (E.D. Tex. 2000)).

Where the requested forum is geographically close to the current forum, as here even in the same state, any "convenience" factors should be given less weight, if even considered at all.  *See e.g., Barr v. Nat'l R.R. Passenger Corp.*, 2009 WL 3497776, at *4 (E.D. PA. Oct. 28, 2009).

## IV.  ARGUMENTS

### A.  By Attempting to Intervene in THIS Court, ARM Waived Its Objections to Venue.

Common sense suggests that someone who wants to join the party, should not be heard to then object to its location.   Indeed, the law incorporates this common sense suggestion.

Case law supports that the right to contest venue is the privilege only of *the parties* to the suit.  *Beam Laser*, 117 F. Supp. 2d at 518.  Many courts agree that intervenors are not permitted to object to venue and are deemed subject to the existing venue of the suit.  *Asbury Glen*, 776 F. Supp. at 1096; *Commonwealth Edison Co.*, 71 F.R.D. at 394; *see also, Moore's Federal Practice*, § 24.22 (Matthew Bender 3d ed.).  Thus, ARM has waived any objections to venue, and has no standing to bring this Motion.[2]  For this reason alone, ARM's Motion to transfer should be denied out of hand.

### B.  Judge Fogel's Previous Experience with a Related Patent Does Not Favor the Northern District of California.

Despite ARM's insistence, Judge Fogel's previous experience with a related patent in *Nazomi Commc'ns Inc. v. Arm Holdings, PLC*, No. 5:02-CV-02521, does not weigh in favor of transfer to the Northern District.  Numerous courts have held

---

[2] Garmin's joinder motion does not cure the defects with ARM's challenge to venue. *See Beam Laser Sys., Inc.*, 117 F. Supp. 2d at 518 (court denied intervenor's motion to transfer stating intervenor may not question venue even when defendants joined in the motion because the strongest reasons given by the defendants in support of transfer concerned the intervenor).

1    that the fact that a "court previously has hosted litigation involving some of the

2    patents at issue is of minimal import." *Acer, Inc. v. Tech. Props. Ltd. et al.*, Nos. C

3    08-877 JF (HRL), C 08-882, 2009 LEXIS 80001, at *7 (N.D. Cal. Feb. 4, 2009)

4    (refusing to transfer case to a court with previous experience with the patents at

5    issue); *see also, ConnecTEL, LLC v. Cisco Sys., Inc.*, No. 2:04-CV-396, 2005 WL

6    366966, at *3 (E.D. Tex. Feb. 16, 2005) (refusing to transfer the action to a court

7    that had previously hosted litigation involving the patent-in-suit because "[t]he

8    present case involves a different defendant and different products"); *Medimmune,*

9    *LLC v. PDL Biopharma, Inc.*, No. C 08-5590 JF (HRL), 2009 WL 1011519, *3

10    (N.D. Cal. April 14, 2009) (same); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518

11    F.3d 897, 905, 86 U.S.P.Q.2d 1038, 1044(Fed. Cir. 2008) (same).

12      ARM provides no reliable analysis demonstrating that there are overlapping

13    issues of infringement, validity, or claim construction between the present case and

14    the 2002 case involving a different patent that would support transfer to Judge

15    Fogel's court.  Incredibly, as its sole support for its assertion that the 2002 litigation

16    involves "exactly the same technology as the present suit," ARM points to a Fogel

17    opinion that was vacated by the Federal Circuit. *Nazomi Commc'ns, Inc. v. Arm*

18    *Holdings, PLC,* 403 F.3d 1364, 74 U.S.P.Q.2d 1458 (Fed. Cir. 2005), *vacating,*

19    *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 2003 U.S. Dist. LEXIS 26380

20    (N.D. Cal. 2003)

21      In reality, this case involves different patents and different claims other than

22    the '215 patent that was at issue in the case heard by Judge Fogel.  In granting the

23    presently-asserted '436 and '362 patents, the Patent Office agreed that the '362 and

24    '436 patent claims were different than the '215 patent claims—a fact which ARM

25    does not and cannot dispute.  (*See* Exs. B and C to Tierney Decl.).

26      Additionally, this case involves different defendants and different accused

27    products.  Contrary to ARM's attempts to cast the present case as being about

28    infringement by the undefined "ARM Products," no ARM product is accused of

Nazomi vs. Nokia, et al.
Case No. 8:10-cv-00151           10          NAZOMI'S OPPOSITION TO ARM'S
MOTION TO TRANSFER AND
GARMIN'S JOINDER IN MOTION

1    infringement.  Rather, Nazomi accuses defendants' products of infringing the '436

2    and '362 patents.  (Compl. at 4-6).  As ARM admits, ARM does not make, use, sell,

3    or offer to sell the defendants' products or even the chips that go into the

4    defendants' products.  (Motion at 6).

5         Also, the limited adjudication of the prior suit against ARM relating to the

6    different patent, different claims, and different products occurred years ago.  The

7    presiding judge, Judge Fogel, barely had any opportunity to study the claims at

8    issue in the previous suit—let alone the entire Northern District as ARM and

9    Garmin contend.  (Motion at 5; D.I. 67 at 1).  Because there is no current case

10   pending in the transferee court resting on the same patents and accused products,

11   there would be no judicial efficiency gained by transferring this case to another

12   court.

13        Even if the same claims were asserted here, which they are not, there is no

14   legitimate danger of inconsistent rulings.  As explained in detail in Section II.A,

15   above, the substantive rulings in the 2002 case between Nazomi and ARM were

16   limited to claim construction of a single term that related to one non-infringement

17   issue.  Thus, there is no danger of this Court expending unnecessary resources to

18   evaluate issues previously addressed by another court—there simply were not any

19   significant previous opinions.  To the extent that there is concern that this Court

20   may order an inconsistent construction of the single limitation construed by Judge

21   Fogel years ago, this Court is free to refer to the prior claim construction.  *See*

22   *ConnecTEL, LLC,* 2005 WL 366966, at *4.

23        Further, to promote impartial consideration, courts have held that prior

24   experience counsels against transfer.  The defendants did not participate in the prior

25   proceedings, therefore they are still "entitled to full briefing and argument because

26   [they are] not collaterally estopped by the prior claim construction ruling."

27   *MedImmune,* 2009 WL 1011519, at *3.  *See also ConnecTEL,* 2005 WL 366966, at

28   *4.  Because the Defendants are entitled to *de novo* claim construction, this can just

Nazomi vs. Nokia, et al.                            11                    NAZOMI'S OPPOSITION TO ARM'S
Case No. 8:10-cv-00151                                                     MOTION TO TRANSFER AND
                                                                          GARMIN'S JOINDER IN MOTION

1   as easily take place in the Central District.  Thus, "the gains in judicial economy are

2   at best minimal, and possibly non-existent since such gains could be realized by

3   simply referring to [this Court's] claim construction, if necessary." *ConnecTEL,*

4   2005 WL 366966, at *4.  What is more, the need for *de novo* analysis means that

5   judicial experience may in fact weigh against transfer. To promote impartial

6   consideration of the facts and issues, several courts have held that prior experience

7   with a patent may counsel having a new case with different parties and products

8   heard by a different court.[3]  As such, Judge Fogel's prior experience with a related

9   patent weighs against transfer to the Northern District.

10      Finally, even if this Court granted transfer of this action to the Northern

11   District, there is no guarantee that the case would be assigned to Judge Fogel.

12   Rather, this case will go through the typical assignment process.  (*See* Ex. M at L-

13   R 3.3(a) (stating that the Clerk assigns cases to a Judge pursuant to the Assignment

14   Plan of the Court), Ex. N (Assignment Plan of the Court), Ex. O at L-R 3-12

15   (describing process to determine whether case is a "related case") to Tierney Decl.).

16   Not only will this process result in delay of this action, it could result in a waste of

17   judicial resources if not ultimately assigned to Judge Fogel.

18      Accordingly, the Northern District's previous experience with *Nazomi*

19   *Commc'ns Inc. v. Arm Holdings, PLC* does not weigh in favor of transfer.  *Acer*,

20   2009 LEXIS 80001, at *2; *see also ConnecTEL*, 2005 WL 366966, at *3.

21      **C.    ARM Failed to Show Inconvenience Sufficient to Justify Transfer.**

22      A party seeking transfer must establish that "a transfer will allow a case to

23   proceed more conveniently and better serve the interests of justice." *Allstar*, 666

24   _____

25   [3] *See Furmanite Am., Inc. v. Durango Assocs., Inc.*, 662 F.Supp. 348, 351, 1
    U.S.P.Q.2d 1999, 2001-2 (E.D. Va. 1986) (holding that "prior judicial experience

26   may actually be more a negative than a positive reason for transfer" when "parties
    are entitled to a *de novo,* impartial consideration" and denying transfer to court with

27   such experience) (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 739, 194
    U.S.P.Q. 49, 51 (1st Cir. 1977) (concluding that prior judicial experience weighed

28   against transfer)); *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co. Ltd.*,
    No. 09-cv-1-BBC, 2009 WL 1615528, *5 (W.D. Wis. June 9, 2009).

1    F.Supp.2d at 1131; *see also, Decker*, 805 F.2d at 843.  As ARM concedes, factors

2    1, 2, 9, and 10 of the *Jones* § 1404(a) test do not apply in the present case.  (Motion

3    at n.3).

4         To demonstrate that transfer is warranted, ARM has the burden to show that

5    the following factors demonstrate that the Northern District is *the* proper venue:

6    "(3) the plaintiff's choice of forum, (4) the respective parties' contacts with the

7    forum, (5) the contacts relating to the plaintiff's cause of action in the chosen

8    forum, (6) the differences in the costs of litigation in the two forums, (7) the

9    availability of compulsory process to compel attendance of unwilling non-party

10   witnesses, and (8) the ease of access to sources of proof."  *Jones*, 211 F.3d at 498-

11   99.

12        Even assuming that ARM has any right to move for transfer, which it does

13   not, ARM fails to satisfy its burden to show inconvenience necessitating the

14   disruption of the plaintiff's choice of forum. *See Decker*, 805 F.2d at 843.

15        **1.    Defendants' Extensive Ties to the Central District of**
              **California Weigh Against Transfer.**
16

17        Defendants have substantial presence in the Central District as set forth

     above in Section II.B, including the Garmin defendants (the only defendants to join
18
     in ARM's motion).  Between Western Digital's and Vizio's headquarters, and five
19
     of the thirteen defendants' facilities in the Central District, as well as Iomega
20
     headquarters in San Diego, the facts show that the Central District is a convenient
21
     venue for the defendants and that the Central District houses a large portion of the
22
     evidence and party witnesses relevant to this case.
23
          Notably, ARM spends no effort to show that the relevant defense evidence is
24
     not in the Central District, or that such evidence is in the Northern District.  While
25
     ARM attempts to list witnesses in the Northern District who may testify, curiously,
26
     not a single defense witness actually made the list. (Motion at 15-16).  Further, the
27
     Garmin defendants admit that they have no presence in the Northern District other
28

1    than their outside counsel, while not denying that they do have facilities in the

2    Central District.   (D.I. 67).   The location of outside counsel is irrelevant to the

3    convenience determination.   *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th

4    Cir. 2003) ("The factor of 'location of counsel' is irrelevant and improper for

5    consideration in determining the question of transfer of venue").   Given that no

6    other defendant offered any statement about relevant witnesses or evidence, nothing

7    in the record favors transfer.

8         ARM has not made the required showing that: (1) defendants have little or no

9    contacts with the Central District, (2) litigation costs would be substantially higher

10   in the Central District because of the lack of the defendants' connections to the

11   District, (3) defendant party witnesses are located only in the Northern District, or

12   (4) other relevant information of the defendants is substantially easier to access in

13   the Northern District.   ARM has not met its burden to show that the Central District

14   is substantially less convenient for the defendants than the Northern District—

15   particularly in light of the fact where the requested forum is geographically close to

16   the current forum, as it is here, any "convenience" factor should be given less

17   weight, if even considered at all.   *See e.g., Barr*, 2009 WL 3497776, at *4.

18              **2.    Nazomi's Location and the Location of Its Witnesses Are
                       Irrelevant to the Determination of Convenience.**

19

20        ARM argues that since Nazomi has relevant information, its location in the

21   Northern District weighs in favor of transfer.   (Motion at 12).   This argument is

     nonsensical.   Nazomi chose the Central District.   Nazomi does not contest venue.

22

23        Further, Nazomi is subject to discovery and state-wide trial subpoenas.   The

24   three individuals whom ARM claims are key witnesses—the named inventors of

25   the patent—would be subject to subpoenas to appear in the Central District for trial.

26   (*See also* Declaration of Mukesh K. Patel In Support of Nazomi's Opposition to

27   ARM's Motion to Transfer Venue and to Garmin's Joinder in ARM's Motion).

28

Accordingly, ARM's arguments relating to the location of Nazomi's evidence and witnesses, and the ease of access to the information are irrelevant. ARM's resorting to these arguments suggest a very weak hand.

**3.    The Claimed "Location" of ARM, Its Evidence, and Its Witnesses Is Not Compelling.**

ARM has failed to demonstrate that its location, and the location of its evidence and witnesses, warrant transfer to the Northern District.  First, ARM has failed to set forth any evidence that its relevant witnesses and evidence are actually located in the Northern District.  (Motion at 15 ("*to the extent that any ARM witness in the United States has relevant evidence*, that witness would *likely* be located at ARM's facility in the Northern District") (emphasis added)).[4]

A party seeking transfer cannot rely on vague generalizations of convenience; rather it is "obligated to identify the key witnesses to be called and present a generalized statement of what their testimony would include." *Heller Fin'l, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989) (citations omitted).  ARM's statements regarding the location of its witnesses and evidence fall short of this obligation.  ARM fails to identify a single ARM witness or any other evidence located in the Northern District—a total failure to meet its burden.

More importantly, ARM's motion assumes that its products are accused in this case, but they are not.  And, to the extent that ARM's witnesses and evidence are even relevant, ARM's vague generalizations about the Northern District are mooted by ARM's concession that the "ARM Products are primarily designed in the United Kingdom."  (Motion at 12).  Travel from the United Kingdom to San Francisco is no easier to facilitate than travel from the United Kingdom to Los Angeles.

---

[4] Interestingly, ARM is not aware of whether it in fact has facilities in the Central District.  (Motion at 12 ("Neither Nazomi nor ARM *appears* to have any facilities in the Central District.") (emphasis added)).

1    Further, ARM's claims of the convenience is further undercut by its recent

2    request to intervene other matters pending in the Central District.   *See*

3    *Microprocessor Enhancement Corp., et. al. v. Mindspeed Techs., Inc.,* Case No.

4    2:09-cv-00603-SVW-RNB, D.I. 10 (C.D. Cal filed Jan. 27, 2009); *Microprocessor*

5    *Enhancement Corp. et. al. v. Texas Instruments Inc*., Case No. 8:08-cv-01123-

6    SVW-RNB, D.I. 19 (C.D. Cal. Filed Oct. 09, 2008); *Microprocessor Enhancement*

7    *Corp. et al v. STMicroelectronics N. V. et al.,* Case No. 8:08-cv-01039-SVW-RNB,

8    D.I. 24 (C.D. Cal. Filed Sept. 17, 2008).  Notably, ARM's motions to intervene in

9    these cases were *not* accompanied by a motion to transfer.  *See id.*

10    Moreover, pointing to the convenience of its own witnesses is simply a

11    gimmick, circular at best.  If this Court should allow intervention, ARM will

12    become a party.  If a party, any inconvenience to its employees must be given little,

13    if any, weight in determining inconvenience.  Accordingly, ARM's argument that

14    the locations of one of its offices and unidentified evidence, and witnesses should

15    be given no weight.

16          **4.    ARM's Speculative Predictions of the Location of Third**
              **Party Evidence and Witnesses Lack Any Merit.**

17

18    While convenience to third party witnesses is given weight in determining

19    transfers, courts have held that the significance of this factor is "substantially

20    reduced by ease of communication and interstate travel in today's business

21    community."  *Gen. Retirement Sys. of the City of Detroit v. The Wells Fargo*

22    *Mortgage Backed Secs. 2006-AR18 Trust*, 2009 WL 2137094, at *6 (N.D. Cal. Sept

23    5, 2007); *see also Effron v. Sun Line Cruises, Inc.,*  67 F.3d 7, 10, 1996 A.M.C.

24    253, 257-8 (2d Cir. 1995).   The close proximity of the Central and Northern

25    Districts underscores the fact that keeping the suit in the Central District will result

26    in no greater inconvenience to third parties than the Northern District.  *See e.g.,*

27    *Barr*, 2009 WL 3497776, at *4.

28

1      ARM relies exclusively on vague generalities about locations of potential

2    third party witnesses—failing once again to meet its burden.  *Heller,* 883 F.2d at

3    1293.  ARM does not identify any third party witness by name, does not provide

4    any witness' place of residence, and does not present any indication of what each

5    witness' testimony would be.  Instead, ARM states only that there is a possibility

6    that the inventors and assignees of a few pieces of potential prior art and

7    anonymous persons purportedly employed at Sun Microsystems may be located in

8    the Northern District.

9       ARM also fails to explain why any of the so-called third party evidence has

10   any bearing on the convenience factors.  The only prior art referenced by ARM is

11   the prior art already considered by the Patent Office as indicated on the face of the

12   '436 patent.  All of the references are published and available irrespective of venue.

13   And, while ARM attempts to rely on a fabricated issue about a possible ownership

14   issue with Sun Microsystems, ARM does not have the standing to assert third party

15   Sun Microsystems' rights.  Thus, ARM's arguments relating to Sun's potential

16   claims are nothing more than a red herring.

17      Even if these unidentified third parties were located in the Northern District

18   and had any relevant information, which ARM has not shown, they would be

19   within the subpoena power of this Court pursuant to Rule 45(b)(2)(C) of the

20   Federal Rules of Civil Procedure.  Thus, there would be no reason that the

21   evidence, if even relevant, could not be obtained should the case proceed in the

22   Central District.[5]

23      To the extent that any costs associated with obtaining the prior art evidence

24   cited by ARM would be higher as a result of the current venue, there is no showing

25

26   _____

27   [5]  ARM does not certify that there are no other third parties with relevant
information to the suit beyond the inventors and assignees of the cited prior art and,
possibly, Sun Microsystems.  ARM also does not certify that *all* third parties with

28   relevant information are located exclusively in the Northern District of California.

**Nazomi vs. Nokia, et al.**
**Case No. 8:10-cv-00151**          17          **NAZOMI'S OPPOSITION TO ARM'S
MOTION TO TRANSFER AND
GARMIN'S JOINDER IN MOTION**

1    that the difference would be more than negligible.  And, ARM has made no effort

2    to explain why its solution would not just be shifting the costs among the parties.

3          As such, ARM has failed to demonstrate that the convenience of third parties

4    necessitates transfer.

5          **D.    Balance of Relevant Public Interest Factors Weighs Strongly
            Against Transfer**

6          Public factors include the administrative difficulties flowing from court

7    congestion, the local public interest in the outcome of a case, and avoidance of

8    conflict of laws.  *See Decker,* 805 F.2d at 843 (internal citations omitted).  None of

9    these factors weigh in favor of transfer in the present case.

10         **1.    Administrative Difficulties Flowing from Court Congestion
                  Is a Neutral Factor.**

11

12         Nazomi agrees with ARM that the time to adjudication is not discernibly

13   shorter in either District, and thus there is no basis for asserting that either Court is

14   more or less congested.  Accordingly, the court congestion factor does not support

15   ARM's burden to justify transfer.

16         **2.    Local Interest in the Outcome of this Dispute Weighs
                  Strongly Against Transfer.**

17

18         ARM's analysis of the factor of local interest in adjudicating the dispute

     leaves out an important consideration – the defendants.  This lawsuit *does* have

19   specific ties to the Central District, where two of the defendant groups are

20   headquartered and the majority of defendant groups operate.  *See* Section II.B,

21   *supra*.  Indeed, the Central District community does have a relation to the litigation,

22   and thus this factor weighs heavily against transfer.

23         **3.    ARM Has Failed to Show that Consistency in Rulings and
                  Application of Law Heavily Favor Transfer.**

24

25         As discussed in great detail in Section IV.B, above, there is no danger of

26   inconsistencies in the rulings of this case and the rulings of Judge Fogel.  Even with

27   unwarranted characterization of the prior litigation record, ARM has not shown that

28   consistency in rulings or application of law strongly favors transfer.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.   CONCLUSION

ARM, as an intervenor, does not have the right to contest venue, and as such, its motion to transfer this action should be denied.   Even if non-party ARM were permitted to request transfer, ARM has failed to meet its burden of establishing that a transfer to the Northern District will allow the case to proceed more conveniently and will better serve the interests of justice.   For these reasons ARM's Motion to Transfer to the Northern District of California should be denied.   For the same reasons, Garmin's Joinder in ARM's Motion to Transfer should be denied.

Dated:  May 17, 2010                                  COOLEY LLP


                                                      /s/ *Thomas J. Friel, Jr.*
                                                      Thomas J. Friel, Jr.

                                                      Attorneys for Plaintiff
                                                      NAZOMI COMMUNICATIONS, INC.

Nazomi vs. Nokia, et al.
Case No. 8:10-cv-00151

19

NAZOMI'S OPPOSITION TO ARM'S
MOTION TO TRANSFER AND
GARMIN'S JOINDER IN MOTION