GEORGE B. NEWHOUSE, JR. (Cal. Bar # 107032)
gnewhouse@brownwhitelaw.com
SYDNEY M. MEHRINGER (Cal. Bar # 245282)
smehringer@brownwhitelaw.com
BROWN WHITE & NEWHOUSE LLP
333 South Hope Street, 40th Floor
Los Angeles, California 90071
Phone: (213) 613-0500
Fax: (213) 613-0550

KEVIN P. ANDERSON (admitted *pro hac vice*)
kanderson@wileyrein.com
WILEY REIN LLP
1776 K St NW
Washington DC 20006
Phone: (202) 719-70000
Fax: (202) 719-7049

Attorneys for Proposed Defendants/Intervenors
ARM LTD. and ARM, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAZOMI COMMUNICATIONS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NOKIA CORPORATION, NOKIA INC., MICROSOFT CORPORATION, AMAZON.COM, INC., WESTERN DIGITAL CORPORATION, WESTERN DIGITAL TECHNOLOGIES, INC., GARMIN LTD., GARMIN CORPORATION, GARMIN INTERNATIONAL, INC., GARMIN USA, INC., SLING MEDIA, INC., VIZIO, INC., IOMEGA CORPORATION,<br><br>Defendants. | SACV 10-151-DOC (RNBx)<br>Hon. David O. Carter, Judge<br><br>Date: June 7, 2010<br>Time: 8:30 a.m.<br><br>Courtroom: 9D<br><br>**REPLY MEMORANDUM IN SUPPORT OF PROPOSED INTERVENORS/DEFENDANTS ARM LTD. AND ARM, INC.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT..........................................................................................2

    A. Nazomi's Waiver Of Venue Argument Conflicts With Ninth Circuit Law. ...................................................................................................2

    B. The Record Plainly Demonstrates The Accused Products And Exact Same Claim Terms Were Squarely Before Judge Fogel. .......................2

        1. The Same Products Were At Issue. ..................................................2

        2. Judge Fogel Considered The Same Scope Of Claim Construction And Technology. ...............................................................................3

        3. The PTO Said The New Claims Are "Not Patentably Distinct" From The Prior Claims. ..............................................................................4

    C. There Are No Ties Between The Central District And Either The Accused ARM Processor Or The Patent. ...............................................4

    D. The Location Of The Known Third Party Witnesses Is The Northern District...................................................................................................6

    E. Nazomi Has No Public Interest Factors Supporting Litigating In The Central District.......................................................................................7

    F. The Northern District And Judge Fogel Are The Appropriate Place For This Litigation.......................................................................................8

III.  CONCLUSION.......................................................................................9

# TABLE OF AUTHORITIES

## CASES

*Coalition of Arizona v. Babbitt*, 100 F.3d 837 (10th Cir. 1996)..............................2

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009) .......................................5, 6, 7

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008)………….................7

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .............................5

*SEC v. Ross*, 504 F.3d 1130 (9th Cir. 2007)...........................................................2

## I. INTRODUCTION

At the outset of the prior litigation, Nazomi made the following statement in a document targeted at all users of ARM's products:

> The suit was filed in the Northern District of California, which <u>we believe offers the most orderly and reliable forum for patent cases</u>.

Supplemental Declaration of Kevin P. Anderson in Support of Intervention and Transfer Motions ("Anderson Decl."), Exh. B at ¶ 8 (emphasis added). After repeatedly losing in its home Northern District, Nazomi now forum-shops for a foreign district that has no relationship with the asserted patents or accused products. This is the prototype case for which the transfer statute was created.

Nazomi's opposition fails to identify a single witness, document, or shred of relevant evidence that has even the most tangential link to the Central District. Instead, Nazomi premises its opposition to transfer on the facially nonsensical statement that "no ARM product is accused of infringement" (Nazomi Br. at pp. 10-11) that flatly contradicts the accusations in the Complaint – each of which identifies an ARM9 or ARM11 processor core as being the accused functionality. Nazomi is playing a game with the Court with this repeated assertion. Merely because ARM's products are incorporated into a third-parties' products does not change the nature of the accusation: Nazomi still accuses the ARM Jazelle hardware acceleration product. Nazomi's entire litigation is an exercise in forum-shopping, defendant-shopping, and product-shopping because Nazomi is thoroughly dissatisfied with the result in the prior case.

Nazomi does not – and cannot – cite to a single case in which transfer was denied when: (1) every known available source of proof (plaintiff, inventors, prior art, third party witnesses) is located in the proposed transfer while (2) the chosen district lacks any source of evidence or relationship with the asserted patents' subject matter and the accused products. The icing on the transfer cake is Judge Fogel's extensive knowledge of the patented technology and accused product.

ARM therefore respectfully requests transfer.

## II. ARGUMENT

### A. Nazomi's Waiver Of Venue Argument Conflicts With Ninth Circuit Law.

The Ninth Circuit rejects Nazomi's argument that intervenors lack or waive the right to challenge venue. As succinctly stated:

> We do not see why an intervenor should be considered to have automatically consented to the jurisdiction of the court. The intervenor has consented to something, but it is not personal jurisdiction. Rather, the quid pro quo for his intervention is that he consents to have the district court determine all issues in the case, including issues of jurisdiction, venue and service of process. ... <u>Intervention of right simply puts the intervenor into the position he would have been in had the plaintiff (or another party) properly named him to begin with</u>.

*SEC v. Ross*, 504 F.3d 1130, 1150 (9th Cir. 2007) (emphasis added). *See also Coalition of Arizona v. Babbitt*, 100 F.3d 837, 844 (10th Cir. 1996) ("If a party has the right to intervene under Rule 24(a)(2), the intervenor becomes no less a party than others and has the right to file legitimate motions, including venue motions. It then becomes the charge of the district court to sort through the motions including, in this case, a possible motion to transfer").

### B. The Record Plainly Demonstrates The Accused Products And Exact Same Claim Terms Were Squarely Before Judge Fogel.

Nazomi's attempt to run away from the extent of the prior six year litigation is inconsistent with the written record from that case. Even a cursory review of the record reveals both the extent of issues presented to Judge Fogel and the overlap with the existing case.

#### 1. The Same Products Were At Issue.

Nazomi is clearly plain wrong when it says that the "accused products are different." In the Complaint in the existing case, Nazomi accuses a variety of ARM9 family processors of infringement. For example:

> 28. Defendant Sling Media ... the Slingbox Pro-HD incorporates an ARM926EJ-S processor core capable of Java hardware acceleration.

Dkt No. 1 at p. 28. This is exactly the same processor identified in the attachments to the Initial Case Management Statement filed by Nazomi in the prior case:

> court, and is imposing legal costs on both ARM and Nazomi. To speed resolution of the case, ARM is willing to submit the liability issues, namely whether the revised ARM926EJ-S Jazelle processor infringes a valid and enforceable patent, to arbitration as soon as possible.

Anderson Decl., Exh. A at p. 9. Moreover, at the outset of the prior case, Nazomi stated on its webpage the accused products in that case:

> 3. Which ARM products or technologies infringe on Nazomi's patent?
>
>    Our lawsuit alleges that ARM's Java™ acceleration technology, which can be embedded with various ARM processor cores (e.g., ARM7, ARM9, ARM10, Secure Core and future products), is infringing on Nazomi's patent.

Anderson Decl., Exh. B. This prior accusation exactly overlays the currently accused processors in the Complaint.

### 2. Judge Fogel Considered The Same Scope Of Claim Construction And Technology.

Nazomi's assertion that a single term, "instruction," was dispositive of the case is true but is misleading about the scope of constructions argued and presented to Judge Fogel. To arrive at his definition of "instruction," Judge Fogel had to evaluate the patented technology and ARM's technology in great detail twice. The definition of "instruction" captured one of the primary distinctions between Nazomi's technology and ARM's technology. This was not some limited evaluation. Judge Fogel took extensive testimony from multiple experts on the technology. All cases are frequently decided on a single limiting factor, but that does not mean that the cases did not extensively consider other relevant factors.

While "instruction" was dispositive, ARM and Nazomi argued the meaning of many other claim terms relevant to the present litigation. For example, Nazomi's prior "Opening Claim Construction Brief" argues **sixteen terms** including:

> "central processing unit," "register file," "instruction," "register-based instruction," "stack-based instruction," "hardware unit," "the operand stack,"

"overflow or underflow indications", "overflow," "underflow," "memory." Anderson Decl., Exh. C. Each of these terms argued to Judge Fogel above exist in the assert patent claims. Anderson Decl., Exh. D.

### 3. The PTO Said The New Claims Are "Not Patentably Distinct" From The Prior Claims.

Nazomi's assertion (at p. 10) that the "Patent Office agreed that the '362 and '436 patent claims were different than the '215 patent claims" is technically true but incomplete and misleading. The PTO actually stated:

> Although the conflicting claims are not identical, they are not patentably distinct from each other because they are obvious variation of each other.

Anderson Decl., Exh. E-F. Essentially, the PTO stated that the new claims are so similar to the prior claims that there is nothing "new" in the new claims that would be sufficient to grant a patent. The PTO procedures provide for a "terminal disclaimer" in which a patentee can obtain additional claims similar to his prior claims if the patentee agrees that the new claims are only in force for as long as the prior claims. Nazomi acquiesced in the PTO characterization of the claims by filing this "terminal disclaimer" which overcame the PTO's rejection. This "terminal disclaimer" is reflected on the face of each patent.

A comparison of the claims demonstrates the undeniable overlap between the prior patent claims and the successor patents' claims. Anderson Decl., Exh. D.

### C. There Are No Ties Between The Central District And Either The Accused ARM Processor Or The Patent.

Nazomi fails to identify any specific relationship between the Central District and either the accused ARM processor cores or the asserted patents. Clearly, the asserted patents are only related to the Northern District where those patents were conceived and where the inventors reside.

Nazomi's sole assertion of relationship to the Central District is the unsurprising fact that many of the Defendants have some form of facility in the Central District. Unlike a personal jurisdiction analysis, the transfer analysis does

not focus on the existence of physical facilities but rather the relationship to the specific case at issue – in particular, the accused ARM Products and the asserted patent. It is utterly irrelevant if the Defendants have facilities in the Central District that have no relationship to the case.

Several Defendants have submitted declarations stating that their facilities in the Central District have no particular relationship or evidence related to the accused ARM processor cores. For example:

- Nokia's facilities in Calabasas and Santa Monica employ only approximately 6% of Nokia's California employees. Anderson Decl., Exh. H at ¶ 3. Moreover, neither the Calabasas nor Santa Monica facilities perform any research or design relating to Java hardware acceleration or specifically relating to the Jazelle feature of ARM processors. Anderson Decl., Exh. H at ¶ 4.
- The facilities cited by Nazomi with respect to Iomega are actually facilities of EMC Corporation and not Iomega. Anderson Decl., Exh. I at ¶ 6. Those facilities do not have any Iomega evidence or fact witnesses related to the accused products. Anderson Decl., Exh. I at ¶ 6.

Additionally, the facilities cited by Nazomi with respect to Amazon.com appear to be Imdb.com facilities. Imdb.com is a wholly separate company from Amazon.com.

Thus, Nazomi is left with no relevant tie between the Central District and this case.[1] *In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009) (denial of transfer

---

[1] Nazomi plainly misstates the law of transfer. ARM is not required to demonstrate any of the factors listed on page 14 of Nazomi's brief. Rather, courts make an "individualized, case-by-case consideration of convenience and fairness" based upon the entire set of facts for each case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)

motion was abuse of discretion since no parties, witnesses, or evidence had any material connection to the chosen venue).

### D. The Location Of The Known Third Party Witnesses Is The Northern District.

The Federal Circuit has unequivocally rejected Nazomi's primary argument on third parties that "close proximity ... will result in no greater inconvenience to third parties than the Northern District." Nazomi Br. at p. 16. In *Nintendo*, the Federal Circuit outlined a 100-mile limit after which inconvenience to witnesses was a significant factor:

> Because inconvenience for witnesses increases with distance from home, the Fifth Circuit established the "100-mile" guideline . . . Under this tenet, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled" . . . .

*Nintendo*, 589 F.3d at 1198-99 (citations omitted).[2] While *Nintendo* relies upon Fifth Circuit law, the concepts are universally recognized: it is significantly more difficult for third parties to travel more than 100 miles because such trips will generally involve airplane travel and/or hotel stays and their attendant costs. Nazomi does not – and cannot – dispute that the inventors located in the Northern District would be inconvenienced by Nazomi's new venue selection. Clearly, all inventors have relevant testimony about conception of the alleged invention. Conspicuously, Nazomi proffers a declaration from only 1 of the 3 inventors (Nazomi's executive Mr. Patel) that the Central District would not be inconvenient. Thus, the other two inventors must presumably believe that it would be a substantial burden to travel to the Central District.

---

[2] Notably, *Nintendo* issued on December 17, 2009 and it appears that Nazomi abandoned its EDTX Complaint to avoid the robust discussion of adverse Fifth Circuit transfer law in *Nintendo* and other recent Federal Circuit cases.

Similarly, Nazomi does not – and cannot – challenge that Sun Microsystems (where Nazomi's inventors worked until shortly before starting Nazomi) will have relevant witnesses and documents which are entirely located in the Northern District. Notably, Nazomi's inventors worked on virtually identical Java acceleration technology while at Sun and thus the inventors' prior employment is clearly an important issue – important enough for Sun to have attended the inventors' depositions in the prior case.

ARM's citation to the prior art establishes one clear point: most of the relevant prior art evidence and witnesses will be focused in the Northern District. It is not that every piece of prior art on the face of the patents will need to be investigated. Rather, the overwhelming predominance of the known prior art clearly indicates that any unknown prior art will likely also be in the Northern District. Nazomi does not, and cannot dispute that conclusion.

Finally, Nazomi's last ditch effort to cite the ability of subpoena power (Nazomi Br. at p. 17) exemplifies why this case should be transferred. Convenience of third parties is one of the most important factors in a transfer analysis. Forcing those parties via subpoena to travel to the Central District defeats that convenience.

### E. Nazomi Has No Public Interest Factors Supporting Litigating In The Central District.

The only public interest factor that Nazomi cites for support is the "local interest" in this case. Nazomi's analysis that the "defendants" "operate" in the Central District is irrelevant. As the Federal Circuit stated: "[i]f the products were sold throughout the United States . . . then the citizens of the venue chosen by the plaintiff 'have no more or less of a meaningful connection to the case than any other venue.'" *Nintendo*, 589 F.3d at 1198 (quoting *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008)). The Defendants have no particular "operation" relevant to the case in the Central District than anywhere else.

The more pertinent analysis is whether the underlying subject matter is one of local interest. Clearly, that analysis favors the Northern District. The inventors, Nazomi, Sun Microsystems, and the known prior art all are focused in the Northern District which thus has a much stronger interest in the resolution of the case.

### F. The Northern District And Judge Fogel Are The Appropriate Place For This Litigation.

As noted herein, the transfer analysis is fundamentally a case-by-case analysis based upon the facts of each situation. It is difficult to imagine a case in which transfer is more warranted based upon the following unique facts:

- The prior litigation involving the same patented technology and the same accused technology;
- Nazomi's statements during the prior litigation that the Northern District of California was the "most orderly and reliable forum for patent cases";
- The complete lack of any relevant evidence or witnesses with knowledge of the patents or the ARM Jazelle hardware acceleration technology in this district;
- The uniform location of the plaintiff and all known witnesses in the Northern District;
- A Court and a Judge (Fogel) that held multiple claim construction proceedings and took extensive evidence from experts to understand the underlying technology of the patent and the accused products.

The point is not that only Judge Fogel can adjudicate this case. ARM cannot, of course, guarantee that a transfer to the Northern District will result in assignment to Judge Fogel.[3] Judge Fogel is not the reason for transfer – his experience is

---

[3] However, the entire purpose of the "related case" and procedures for reassignment would seem to be to address cases such as this and ensure that the cases get to the prior judge who can most efficiently handle complex cases.

merely an additional strong factor that is not present in most transfer motions.

The point is also not that this District cannot adjudicate the case. ARM is confident that whatever judge ultimately adjudicates the case will agree with Judge Fogel and the Federal Circuit in their prior ruling that the ARM technology is just fundamentally different from Nazomi's. The point is that if the transfer statute is to have any meaning whatsoever, it should be applied here. The evidence is undeniable and solely in the Northern District. That is where this case belongs – just as Nazomi stated in 2002 when it filed its original lawsuit.

### III. CONCLUSION

For at least the foregoing reasons, ARM respectfully requests that the Court grant its motion to transfer to the Northern District of California.

DATED: May 24, 2010                    Respectfully submitted,

                                       BROWN WHITE & NEWHOUSE LLP

                                       By  /s/ George B. Newhouse, Jr.
                                           GEORGE B. NEWHOUSE, JR.
                                           SYDNEY M. MEHRINGER
                                           Proposed Defendants/Intervenors
                                           ARM LTD. and ARM, INC.