COOLEY LLP
Thomas J. Friel, Jr. (Ca Bar No. 80065)
tfriel@cooley.com
Erica C. Tierney (Ca Bar No. 253557)
etierney@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:   (650) 843-5000
Facsimile:    (650) 857-0663

James P. Brogan (Ca Bar No. 155906)
jbrogan@cooley.com
Wayne O. Stacy (Co Bar No. 32716)
wstacy@cooley.com
Sarah J. Guske (Ca Bar No. 232467)
sguske@cooley.com
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone:   (720) 566-4000
Facsimile:    (720) 566-4099

Attorneys for Plaintiff
NAZOMI COMMUNICATIONS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nazomi Communications, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Nokia Corporation, Nokia Inc., Microsoft Corporation, Amazon.com, Inc., Western Digital Corporation, Western Digital Technologies, Inc., Garmin Ltd., Garmin Corporation, Garmin International, Inc., Garmin USA, Inc., Sling Media, Inc., VIZIO, Inc., Iomega Corporation,<br><br>Defendants. | Case No. SACV10-151 DOC (RNBx)<br><br>The Hon. David O. Carter<br><br>**PLAINTIFF NAZOMI COMMUNICATIONS, INC.'S OPPOSITION TO RENEWED MOTION OF DEFENDANTS/INTERVENORS ARM, LTD. AND ARM, INC. TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>Date:       August 30, 2010<br>Time:       8:30 a.m.<br>Courtroom:   9D<br><br>**JURY TRIAL DEMANDED** |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Nazomi v. Nokia, et al.**
**Case No. 8:10-cv-00151**

**NAZOMI'S OPPOSITION TO ARM'S**
**RENEWED MOTION TO TRANSFER**

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION .................................................................................. 1

II.   ARGUMENTS ...................................................................................... 2

      A.   The Facts Cited by ARM in Favor of Personal Jurisdiction do
           not Alter the Transfer Analysis ................................................... 2

           1.   ARM Does not Deny that Personal Jurisdiction and
                Venue are Proper in this District ...................................... 2

           2.   ARM's and the Defendants' "Contacts" with the Northern
                District are Not Determinative .......................................... 3

      B.   ARM's Previously-Uncited Legal Authority Does not Support
           Transfer in the Present Case ........................................................ 4

           1.   In re Zimmer Holdings, Inc. has no Bearing on the
                Present Case ....................................................................... 4

           2.   ARM's Renewed Motion Fails to Rebut Authority
                Against Transfer Based on Prior Litigation ...................... 6

      C.   The Convenience Factors Still do not Weigh in Favor of
           Transfer. ..................................................................................... 12

           1.   ARM Failed to Show Inconvenience Sufficient to Justify
                Transfer ............................................................................ 13

           2.   The Balance of Relevant Public Interest Factors Weigh
                Strongly Against Transfer ................................................ 20

III.  CONCLUSION ................................................................................... 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Nazomi v. Nokia, et al.
Case No. 8:10-cv-00151

i.

NAZOMI'S OPPOSITION TO ARM'S
RENEWED MOTION TO TRANSFER

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACCO Brands, Inc. v. PC Guardian Anti-Theft Products, Inc.*
   No. 2:03-cv-00425 ............................................................................ 10

*Acer, Inc. v. Tech. Props. Ltd. et al.,*
   Nos. C 08-877 JF (HRL), 2009 LEXIS 80001, at *7 (N.D. Cal. Feb. 4,
   2009) ................................................................................... 6, 7, 11

*Allstar Mktg. Group LLC v. Your Store Online, LLC*
   666 F. Supp. 2d 1109 (C.D. Cal. 2009)................................... 2, 12, 13

*In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*
   102 F.3d 1524 (9th Cir. 1996), *rev'd on other grounds sub nom* ................... 10

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*
   No. C 06-2469 CW, 2006 U.S. Dist. LEXIS 75339 (N.D. Cal. Oct. 6,
   2006) ............................................................................................ 13

*Arete Power, Inc. v. Beacon Power Corp.*
   No. C 07-5167 WDB, 2008 WL 508477 (N.D. Cal. Feb. 22, 2008)................ 18

*Barr v. Nat'l R.R. Passenger Corp.*
   No. 08-CV-2529, 2009 WL 3497776 (E.D. PA. Oct. 28, 2009)....... 5, 13, 15, 18

*Codex Corp. v. Milgo Elec. Corp.*
   553 F.2d 735, 194 U.S.P.Q. 49 (1st Cir. 1977) ................................. 10

*ConnecTEL, LLC v. Cisco Sys., Inc.*
   No. 2:04-CV-396, 2005 WL 366966 (E.D. Tex. Feb. 16, 2005) .............. 7, 9, 11

*Decker Coal Co. v. Commonwealth Edison Co.*
   805 F.2d 834 (9th Cir. 1986) ....................................... 2, 12, 13, 14, 20

*Effron v. Sun Line Cruises, Inc.*
   67 F.3d 7, 1996 A.M.C. 253 (2d Cir. 1995) ..................................... 18

*Furmanite Am., Inc. v. Durango Assocs., Inc.*
   662 F.Supp. 348 (E.D. Va. 1986)................................................ 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Nazomi v. Nokia, et al.**
**Case No. 8:10-cv-00151**

ii.

**NAZOMI'S OPPOSITION TO ARM'S**
**RENEWED MOTION TO TRANSFER**

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Gen. Retirement Sys. of the City of Detroit v. The Wells Fargo Mortgage*
4
  *Backed Secs. 2006-AR18 Trust*
  Nos. C 09-1376 SI, 2009 WL 2137094, at *6 (N.D. Cal. Sept 5, 2007) ........... 18
5

*In re Genetech*
6
  566 F.3d 1338 (Fed. Cir. 2009) ......................................................................... 18
7

*Heller Fin'l, Inc. v. Midwhey Powder Co.*
8
  883 F.2d 1286 (7th Cir. 1989) ....................................................5, 6, 15, 17, 19
9

*In re Hoffman-La Roche Inc.*
10
  587 F.3d 1333,1338 (Fed. Cir. 2009) ............................................................... 2
11

*In re Horseshoe Entm't*
12
  337 F.3d 429 (5th Cir. 2003) ........................................................................... 14
13

*Hunter Engineering Co. v. Accu Industries, Inc.*
14
  245 F. Supp. 2d 761 (E.D. Va. 2002) ............................................................... 10
15

*Invitrogen Corp. v. General Elec. Co.*
  No. 6:08-CV-112, 2009 U.S. Dist. LEXIS 9127 (E.D. Tex. Feb. 9, 2009) ....... 10
16

*Jackson v. Intel Corp.*
17
  No. 2:08-CV-154, 2009 WL 749305 (E.D. Tex. Mar. 19, 2009) ...................... 11
18

*Jones v. GNC Franchising, Inc.*
19
  211 F.3d 495 (9th Cir. 2000) ....................................................2, 12, 13, 14, 16
20

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
21
  523 U.S. 26, 118 S. Ct. 956 (1998) .................................................................. 10
22

*Max Planck v. General Elec. Co.*
23
  858 F.Supp. 380 (S.D.N.Y.1994) ...................................................................... 11
24

*MedImmune, LLC v. PDL Biopharma, Inc.*
25
  No. C 08-5590 JF (HRL), 2009 WL 1011519 (N.D. Cal. April 14, 2009) ..... 8, 9
26

*Metz v. U.S. Life Ins. Co.*,
  2009, LEXIS 126876, at *18 (C.D. Cal. Dec. 19, 2009) .................................. 13
27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Nazomi v. Nokia, et al.**
**Case No. 8:10-cv-00151**

iii.

**NAZOMI'S OPPOSITION TO ARM'S**
**RENEWED MOTION TO TRANSFER**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Micron Tech., Inc. v. Mosaid Techs., Inc.*
   518 F.3d 897 (Fed. Cir. 2008)..................................................................8

*Microprocessor Enhancement Corp., et. al. v. Mindspeed Techs., Inc.*
   Case No. 2:09-cv-00603-SVW-RNB ......................................................17

*Microprocessor Enhancement Corp. et al v. STMicroelectronics N. V. et al.*
   Case No. 8:08-cv-01039-SVW-RNB ......................................................17

*Microprocessor Enhancement Corp. et. al. v. Texas Instruments Inc.*
   Case No. 8:08-cv-01123-SVW-RNB ......................................................17

*Mohamed v. Mazda Motor Corp.*
   90 F.Supp.2d 757 (E.D. Tex. 2000) ......................................................13

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*
   2003 U.S. Dist. LEXIS 26380 (N.D. Cal. 2003) .....................................8

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*
   403 F.3d 1364 (Fed. Cir. 2005), *vacating* ...........................................8

*Nazomi Commc'ns Inc. v. Arm Holdings, PLC*
   No. 5:02-CV-02521 ............................................................................7, 11

*Realtime Data, LLC v Morgan Stanley*
   No. 6:09-CV-326-LED-JDL, 2010 U.S. Dist. LEXIS 26183, at *11 (E.D. Tex. Mar. 18, 2010)......................................................................6, 7

*Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co. Ltd.*
   No. 09-cv-1-BBC, 2009 WL 1615528 (W.D. Wis. June 9, 2009) ...................10

*Steelcase, Inc. v. Haworth, Inc.*
   41 U.S.P.Q.2d 1468 (C.D. Cal. 1996)....................................................18

*Stewart Org. v. Ricoh Corp.*
   487 U.S. 22, 108 S.Ct. 2239 (1988) ................................................12, 16

*Szegedy v. Keystone Food Prod., Inc.*
   2009 U.S. Dist. LEXIS 83444 (C.D. Cal. Aug. 26, 2009) ........................13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Nazomi v. Nokia, et al.
Case No. 8:10-cv-00151                        iv.                NAZOMI'S OPPOSITION TO ARM'S
                                                                  RENEWED MOTION TO TRANSFER

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*
  No. 6:09-CV-448-JDL, 2010 U.S. Dist. LEXIS 69536 (E.D. Tex. July 13, 2010) ........................................................................................ 6, 7

*Warrick v. General Electric Co.*
  70 F.3d 736 (2d Cir.1995) ..................................................................... 10

*Washington Pub. Util. Group v. United States Dist. Ct.*
  843 F.2d 319 (9th Cir. 1987) ............................................................... 10

*In re Zimmer Holdings, Inc.*
  2010 U.S. App. LEXIS 12939 (Fed. Cir. June 24, 2010) ........................... 4, 5, 6

STATUTES

28 U.S.C. § 1404 .................................................................................. 10

28 U.S.C. § 1404(a) ........................................................ 1, 2, 11, 12, 13, 16

Rule 45(b)(2)(C) of the Federal Rules of Civil Procedure.................................... 20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Nazomi v. Nokia, et al.**
**Case No. 8:10-cv-00151**

v.

**NAZOMI'S OPPOSITION TO ARM'S**
**RENEWED MOTION TO TRANSFER**

Plaintiff, Nazomi Communications, Inc., ("Nazomi") respectfully opposes Defendant/Intervenors, ARM, Ltd., and ARM, Inc.'s (collectively "ARM") renewed motion to transfer pursuant to 28 U.S.C. § 1404(a) ("Renewed Motion").

## I.   INTRODUCTION

On February 8, 2010, Nazomi filed its Complaint for Patent Infringement against Nokia Corporation, Nokia, Inc., Microsoft Corporation, Amazon.com, Inc., Western Digital Corporation, Western Digital Technologies, Inc., Garmin Ltd., Garmin Corporation, Garmin International, Inc., Garmin USA, Inc., Sling Media, Inc., VIZIO, Inc., and Iomega Corporation (collectively "Defendants"). (Compl. at 1).

ARM filed a motion seeking an intra-California transfer of venue pursuant to 28 U.S.C. § 1404(a) on April 27, 2010. (D.I. 51-1). On June 21, 2010, this Court denied ARM's motion to transfer. (D.I. 112). Notwithstanding this Court's order, and without asserting any justification for not including in the original motion the new arguments it now makes, ARM filed this Renewed Motion to Transfer to the Northern District of California on August 2, 2010.

While it was understood at the June 28, 2010 meet and confer that ARM intended to address only the issue of personal jurisdiction in its renewed motion, the Renewed Motion, as filed, also includes additional new arguments. Yet, in raising its new arguments, ARM points only to facts that were available to ARM at the time of the original motion and that do not move ARM any closer to meeting its burden. Despite ARM's attempts to take a second bite of the apple, nothing in the Renewed Motion compels transfer from this Court to the Northern District.

First, in arguing that personal jurisdiction in the Northern District exists, neither ARM nor the Defendants proffering declarations deny that the Central District also has personal jurisdiction over them. Moreover, the Northern District contacts for most of the Defendants are contacts that also exist in the Central

District.   Thus, the "contacts" cited in support of the jurisdiction are neutral to transfer, at best.

Second, while the Renewed Motion alleges that this case is analogous to other cases resulting in transfer, those cases have little bearing on the present case.

Finally, as addressed in Nazomi's opposition to ARM's original motion (D.I. 72) and as addressed herein, ARM has not shown that the relevant convenience factors under *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) and the public factors set forth in *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986) weigh in favor of transfer.

Because the party seeking transfer bears the burden of establishing that a transfer is warranted, and ARM has, once again, failed to meet its burden, the Renewed Motion should be denied.   *Allstar Mktg. Group LLC v. Your Store Online, LLC,* 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009).

## II.   ARGUMENTS

### A.   The Facts Cited by ARM in Favor of Personal Jurisdiction do not Alter the Transfer Analysis.

#### 1.   ARM Does not Deny that Personal Jurisdiction and Venue are Proper in this District.

Neither ARM nor the Defendants deny that jurisdiction is proper in the present venue—the Central District.   Thus, per ARM's own argument, venue is proper in the Central District.   *In re Hoffman-La Roche Inc.*, 587 F.3d 1333,1338 (Fed. Cir. 2009).   (*See also*, Renewed Motion of ARM to Transfer Pursuant to 28 U.S.C. § 1404(a), D.I. 134-1 (hereinafter "Ren. Mot.") at 6-7, 9).   At worst, personal jurisdiction is a neutral in the transfer analysis.   At best, the fact that this Court has personal jurisdiction and it is also the plaintiff's forum of choice weighs in favor of maintaining the case in the Central District.   *See Decker*, 805 F.2d at 843.

Nazomi v. Nokia, et al.
Case No. 8:10-cv-00151

2

NAZOMI'S OPPOSITION TO ARM'S
RENEWED MOTION TO TRANSFER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.      ARM's and the Defendants' "Contacts" with the Northern District are Not Determinative.**

Even putting aside the fact that all of the evidence presented in the Renewed Motion and Defendant declarations relating to personal jurisdiction was available to ARM at the time it filed its original motion, the arguments and declarations are ultimately of little value in the venue analysis.   While most of the Defendants submitted declarations in support of the Renewed Motion that purport to address contacts with the Northern District, both the Renewed Motion and the declarations omit information critical to the personal jurisdiction evaluation and the convenience factors for transfer.

In particular, Amazon did not submit a declaration regarding its ties to the Northern District of California, and ARM provided no other evidence demonstrating any alleged Amazon contacts with the Northern District.   As such, the facts are insufficient for Nazomi or the Court to determine whether this Court has personal jurisdiction over *all* of the Defendants, which the Court expressly demanded.   (D.I. 112 at 9-10).

Additionally, in the submitted declarations, the Defendants point to retail or online sales in the Northern District as contacts with the jurisdiction.   (*See* D.I. 134-2).   In fact, for many of the Defendants that submitted declarations, they cite exclusively to sales activities as their only Northern District contacts.   (Ren. Mot. at 5; D.I. 134-2, Exs. A-C, E, H).   And, while ARM and some declarants allege that the Defendants' sales activities are "purposely directed" to the Northern District, the evidence presented for the purported "purposeful" direction or that sales were actually made are declarations from a subset of Defendants that provide little, if any, detail.   (Ren. Mot. at 4, 5).

Even if the activities were shown to be purposely directed at the Northern District for all Defendants, in all cases, the sort of retail and online sales identified in the briefing also exists in the Central District—a fact that ARM and the

1   Defendants do not and cannot deny.  Further, the cited retail establishments such as

2   Best Buy, Walmart, Costco, and Target each have locations throughout the Central

3   District of California.  (Declaration of Erica C. Tierney In Support Of Nazomi's

4   Opposition to ARM's Renewed Motion to Transfer (hereinafter "Tierney Decl."),

5   Ex. A).  Therefore, these Northern District contacts are then also probative of the

6   Central District's jurisdiction.

7        And, for the Defendants that submitted declarations—even for ARM and the

8   Defendants that made any effort to point to contacts other than sales—the

9   declarations only identify office locations in the Northern District or state without

10  any detail or support that suppliers in the Northern District may have relevant or

11  even discoverable information.    (D.I. 134-2, Exs. D, F, G).  Accordingly, none of

12  the declarations identify any relevant party evidence that is located in the Northern

13  District, and, as before, nearly all are silent as to evidence located in the present

14  venue.

15       Thus, while establishing personal jurisdiction in the transferee court is

16  necessary to support a motion to transfer venue, it cannot be said that ARM has

17  demonstrated jurisdiction for *all* Defendants.  And, even if jurisdiction were shown,

18  the "contacts" should not be given any weight for the convenience factor analysis as

19  none of the Northern District contacts go to the location of relevant evidence or are

20  otherwise of more importance than the contacts in the Central District.  Even ARM

21  appears to agree that the facts cited to support jurisdiction are not relevant to the

22  convenience factor analysis, as it does not assert that the Northern District contacts

23  weigh in favor of transfer.

24  **B.    ARM's Previously-Uncited Legal Authority Does not Support Transfer in the Present Case.**

25

26  **1.    *In re Zimmer Holdings, Inc.* has no Bearing on the Present Case.**

27       ARM's reliance on *In re Zimmer Holdings, Inc.* is misplaced as the facts of

28  that case differ dramatically from this case.  2010 U.S. App. LEXIS 12939 (Fed.

1  Cir. June 24, 2010).   Here, there is no evidence that Nazomi has attempted to

2  "manufacture venue" in this District similar to the plaintiff in *In re Zimmer*. *Id.* at

3  \*7-8.   Contrary to *In re Zimmer*, the connection between this case and this District

4  is more than a "legal fiction." *Id.* at \*10.[1]   It is undisputed that many of the

5  Defendants have significant ties to this District, including the fact that two of the

6  Defendants are headquartered in this District—VIZIO and Western Digital.   (D.I.

7  72-1, Exs. D and E).   As for the other Defendants, as discussed in detail in the last

8  round of briefing, all have ties to the Central District.[2]   (D.I. 72[3] at 11-12, 18-19).

9        Moreover, a party seeking transfer cannot rely on vague generalizations of

10  convenience; rather it is "obligated to identify the key witnesses to be called and

11  present a generalized statement of what their testimony would include." *Heller*

12  *Fin'l, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (citations

13  omitted).   Nothing in *In re Zimmer* changes the burden—regardless of ARM's

14  inexplicable attempt to shift its burden to Nazomi to identify the location of

15  relevant documents and witnesses.   (Ren. Mot. at 8).

16        As discussed in greater detail in the convenience factor analysis below, in the

17  face of the law on the burden of proof, neither ARM nor any of the filed

18  declarations of the Defendants confirm that any defendant-related evidence is

19  located in the Northern District. *See* Section II.C.   ARM also has not endeavored to

20  identify any of its own evidence that is located within or even near the Northern

21

22  [1] Further, unlike *In re Zimmer* where the plaintiff's principal place of business was
    over a thousand miles away from where it filed suit, Nazomi's principal place of

23  business is located within a couple hundred miles—in the same state—where this
    suit is pending. 2010 U.S. App. LEXIS 12939, at \*7-8.   Again, the close proximity

24  of the Central and Northern Districts underscores the fact that keeping the suit in
    the Central District will result in no greater inconvenience to third parties than the

25  Northern District. *See e.g., Barr v. Nat'l R.R. Passenger Corp.*, No. 08-CV-2529,
    2009 WL 3497776, at \*4 (E.D. PA. Oct. 28, 2009).

26  [2] ARM's suggestion that "Nazomi effectively conceded that three of the seven
    facilities it previously identified had absolutely no relationship or evidence relating

27  to the accused processor cores," is simply wrong.   (Ren. Mot. at 9).   Nazomi has
    made no such concession.

28  [3] For any citation directly to this Court's docket, the page numbers will reflect the
    page numbers printed by this Court located at the top of the document.

District.  And, of the listed witnesses in the Northern District that ARM alleges may testify, not a single defense witness actually made the list.  (Ren. Mot. at 10-11, 19-21; D.I. 51-1 at 21-22).

Instead, ARM's arguments are based exclusively on vague generalities about locations of potential witnesses, which is not sufficient. *Heller,* 883 F.2d at 1293. ARM continues its heavy reliance on the prior art already considered by the Patent Office as indicated on the face of the '436 patent.   All of the references are published and available irrespective of venue.   And, as before in the original motion, no attempt by the movant has been made to show that any prior art-related evidence or witnesses currently resides in the Northern District.  (D.I. 72 at 21-23). The same is true for ARM's misplaced statements relating to Sun Microsystems. (*See id.*).

Thus, nothing in the established venue transfer law or in the recent *In re Zimmer* case justifies ARM's failure to meet its burden or its attempt to shift its burden to Nazomi.

### 2.   ARM's Renewed Motion Fails to Rebut Authority Against Transfer Based on Prior Litigation.

ARM's Renewed Motion cites no authority contrary to the recent precedent holding that the fact that a "court previously has hosted litigation involving some of the patents at issue is of minimal import"—let alone any authority giving weight to previous litigations involving many *different* patents as is the issue here.  *Acer, Inc. v. Tech. Props. Ltd. et al.*, Nos. C 08-877 JF (HRL), C 08-882, 2009 LEXIS 80001, at *7 (N.D. Cal. Feb. 4, 2009).  Both of the recent district court cases cited by ARM in its Renewed Motion are distinguishable from the present situation based on the facts.

Unlike in the present case, there was an overlap in the patents being asserted in both the previous and present actions in ARM's cited cases.[4]  *See U.S. Ethernet*

---

[4] In *Realtime Data, LLC v Morgan Stanley*, the two patents which overlapped with the previous action were not ultimately asserted at trial, but they were the subject of an earlier

1   *Innovations, LLC v. Acer, Inc.*, No. 6:09-CV-448-JDL, 2010 U.S. Dist. LEXIS

2   69536, at *29 (E.D. Tex. July 13, 2010); *Realtime Data*, 2010 U.S. Dist. LEXIS

3   26183, at *18 ("notably, terms from the '761 and '506 patents were previously

4   construed by this court").  Further, unlike here, in both of ARM's newly-cited

5   cases, the previous action had required a substantial investment of judicial

6   resources.  *See U.S. Ethernet Innovations*, 2010 U.S. Dist. LEXIS 69536, at *29

7   (granting motion to transfer where the transferee district had held a two-week jury

8   trial that considered questions of invalidity, infringement, and damages for three of

9   the four patents asserted in the present action); *Realtime Data*, 2010 U.S. Dist.

10  LEXIS 26183, at *17-18 (denying a motion to transfer the case where the presiding

11  judge had "already presided over a comprehensive *Markman* process; motions for

12  Summary Judgment on Indefiniteness, Invalidity, and Non-Infringement; *Daubert*

13  expert motions, and Pre-Trial matters in a case involving similar, if not identical,

14  technology.")  As discussed in Nazomi's previous briefing, and reiterated, in part,

15  here for the Court's convenience, the limited adjudication of the prior suit against

16  ARM occurred years ago and related to a different patent, different claims, and

17  different products.  (*See* D.I. 72 at 8-11, 14-17).

18       Despite ARM's insistence, Judge Fogel's previous experience with a related

19  patent in *Nazomi Commc'ns Inc. v. Arm Holdings, PLC*, No. 5:02-CV-02521, does

20  not weigh in favor of transfer to the Northern District.   (D.I. 72 at 14-17).

21  Numerous courts have held that the fact that a "court previously has hosted

22  litigation involving some of the patents at issue is of minimal import."  *Acer,* 2009

23  LEXIS 80001, at *7 (refusing to transfer case to a court with previous experience

24  with the patents at issue); *see also, ConnecTEL, LLC v. Cisco Sys., Inc.*, No. 2:04-

25  CV-396, 2005 WL 366966, at *3 (E.D. Tex. Feb. 16, 2005) (refusing to transfer the

26  action to a court that had previously hosted litigation involving the patent-in-suit

27  claim construction opinion.  No. 6:09-CV-326-LED-JDL, 2010 U.S. Dist. LEXIS 26183,

28  at *11 (E.D. Tex. Mar. 18, 2010).

1    because "[t]he present case involves a different defendant and different products");

2    *MedImmune, LLC v. PDL Biopharma, Inc.*, No. C 08-5590 JF (HRL), 2009 WL

3    1011519, *3 (N.D. Cal. April 14, 2009) (same); *Micron Tech., Inc. v. Mosaid*

4    *Techs., Inc.*, 518 F.3d 897, 905 (Fed. Cir. 2008) (same).

5          ARM provides no reliable analysis demonstrating that there are overlapping

6    issues of infringement, validity, or claim construction between the present case and

7    the 2002 case involving a different patent that would support transfer to Judge

8    Fogel's court.  In the first round of briefing, ARM's sole support for its assertion

9    that the 2002 litigation involves "exactly the same technology as the present suit,"

10   was a Fogel opinion that was vacated by the Federal Circuit.  *Nazomi Commc'ns,*

11   *Inc. v. Arm Holdings, PLC,* 403 F.3d 1364 (Fed. Cir. 2005), *vacating*, *Nazomi*

12   *Commc'ns, Inc. v. Arm Holdings, PLC*, 2003 U.S. Dist. LEXIS 26380 (N.D. Cal.

13   2003).  ARM failed to offer any additional support for its assertion in its Renewed

14   Motion.

15         In reality, this case involves different patents and different claims other than

16   the '215 patent that was at issue in the case heard by Judge Fogel.  In granting the

17   presently-asserted '436 and '362 patents, the Patent Office agreed that the '362 and

18   '436 patent claims were different than the '215 patent claims—a fact which ARM

19   still does not and cannot dispute.  (*See* D.I. 72-1, Exs. B, C; D.I. 79 at 7).

20         Additionally, this case involves different defendants and different accused

21   products.  (*See* also D.I. 72 at 15-16).  Contrary to ARM's attempts to cast the

22   present case as being about its own activities, Nazomi filed a complaint alleging

23   that the *Defendants'* products infringe the '436 and '362 patents.  (Compl. at 4-6).

24   As ARM admits, ARM does not make, use, sell, or offer to sell the Defendants'

25   products or even the chips that go into the Defendants' products.  (D.I. 51-1 at 12).

26   It is an act of legal fiction for ARM to insert itself into a litigation as an intervenor

27   simply to manufacture facts to argue in support of venue transfer.

28

1     Also, the limited adjudication of the prior suit against ARM relating to the

2     different patent, different claims, and different products occurred years ago.  (*See*

3     *also* D.I. 72 at 8-11, 14-17).  The presiding judge, Judge Fogel, barely had any

4     opportunity to study the claims at issue in the previous suit—let alone the entire

5     Northern District as ARM and Garmin contend.  (D.I. 51-1 at 11).  Because there is

6     no current case pending in the transferee court resting on the same patents and

7     accused products, there would be no judicial efficiency gained by transferring this

8     case to another court.

9         Even if the same claims were asserted here, which they are not, there is no

10    legitimate danger of inconsistent rulings.  The substantive rulings in the 2002 case

11    between Nazomi and ARM were limited to claim construction of a single term that

12    related to one non-infringement issue.  (*See also* D.I. 72 at 8-11).  Thus, there is no

13    danger of this Court expending unnecessary resources to evaluate issues previously

14    addressed by another court—there simply were not any significant previous

15    opinions.   To the extent that there is concern that this Court may order an

16    inconsistent construction of the single limitation construed by Judge Fogel years

17    ago, this Court is free to refer to the prior claim construction.  *See ConnecTEL,*

18    *LLC,* 2005 WL 366966, at *4.

19        Further, to promote impartial consideration, courts have held that prior

20    experience counsels against transfer.  The Defendants did not participate in the

21    prior proceedings, therefore they are still "entitled to full briefing and argument

22    because [they are] not collaterally estopped by the prior claim construction ruling."

23    *MedImmune,* 2009 WL 1011519, at *3.  *See also ConnecTEL,* 2005 WL 366966, at

24    *4.  Because the Defendants are entitled to *de novo* claim construction, this can just

25    as easily take place in the Central District.  Thus, "the gains in judicial economy are

26    at best minimal, and possibly non-existent since such gains could be realized by

27    simply referring to [this Court's] claim construction, if necessary."  *ConnecTEL,*

28    2005 WL 366966, at *4.  What is more, the need for *de novo* analysis means that

1  judicial experience may in fact weigh against transfer. To promote impartial

2  consideration of the facts and issues, several courts have held that prior experience

3  with a patent may counsel having a new case with different parties and products

4  heard by a different court.[5]   As such, Judge Fogel's prior experience with a related

5  patent weighs against transfer to the Northern District.

6      ARM's newly-cited, non-binding authority to support its judicial economy

7  argument is of little import.[6]   (Ren. Mot. at 22-23).  This Court has already noted in

8  this case, "another judge's familiarity with a case 'standing alone' is insufficient to

9  justify transfer under section 1404."   (D.I. 112 at 9 (quoting *In re American*

10 *Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1548 (9th Cir.

11 1996), *rev'd on other grounds sub nom. Lexecon Inc. v. Milberg Weiss Bershad*

12 *Hynes & Lerach*, 523 U.S. 26, 118 S. Ct. 956 (1998) (citing *Warrick v. General*

13 *Electric Co.,* 70 F.3d 736, 740 (2d Cir.1995) (per curiam) (judicial economy "is not

14 alone sufficient" to justify a transfer);   *Washington Pub. Util. Group v. United*

15 *States Dist. Ct.,* 843 F.2d 319, 326 (9th Cir. 1987) ("[A] federal court may not order

16 transfer under section 1404(a) solely for its convenience."); *Codex Corp. v. Milgo*

17

18  [5] *See Furmanite Am., Inc. v. Durango Assocs., Inc.*, 662 F.Supp. 348, 351(E.D. Va. 1986) (holding that "prior judicial experience may actually be more a negative than a positive reason for transfer" when "parties are entitled to a *de novo,* impartial consideration" and

19  denying transfer to court with such experience) (citing *Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 739 (1st Cir. 1977) (concluding that prior judicial experience weighed

20  against transfer)); *Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co. Ltd.*, No. 09-cv-1-BBC, 2009 WL 1615528, *5 (W.D. Wis. June 9, 2009).

21  [6] Even if relevant, the additional non-binding authority cited by ARM is distinguishable from this case.   *Hunter Engineering Co. v. Accu Industries, Inc.*, 245 F. Supp. 2d 761,

22  775 (E.D. Va. 2002) (where the judge had "expended significant judicial resources in attempting to resolve [claims relating to the same type of technology] . . . [and also]

23  "employed a court expert to help sort through the various legal issues at considerable cost to the parties"); *Invitrogen Corp. v. General Elec. Co.*, No. 6:08-CV-112, 2009 U.S. Dist.

24  LEXIS 9127, at *14 (E.D. Tex. Feb. 9, 2009) (granting motion to transfer where plaintiff did "not dispute any of [the] extensive connections between the [transferee district] and

25  the patents, parties, and products at issue in this case," and the transferee court had "construed three of the six patents at issue and presided over a jury trial");   *ACCO Brands,*

26  *Inc. v. PC Guardian Anti-Theft Products, Inc.*, No. 2:03-cv-00425, D.I. 14 (E.D. Tex. July 23, 2004) (granting motion to transfer where "no claim [was] made that the technology

27  disclosed in the patent in suit [was] substantially different than that disclosed in . . . a patent previously litigated by these same parties in [the transferee] court").

28

**Nazomi v. Nokia, et al.**                              **NAZOMI'S OPPOSITION TO ARM'S**
**Case No. 8:10-cv-00151**                    10        **RENEWED MOTION TO TRANSFER**

1    *Electronic Corp.,* 553 F.2d 735, 739 (1st Cir. 1977), *cert. denied,* 434 U.S. 860, 98

2    S.Ct. 185, 54 L.Ed.2d 133 (1977) ("[W]e have found no case where [the desire for

3    consolidation] has carried the day against factors pointing in the other direction.");

4    *Max Planck v. General Elec. Co.,* 858 F.Supp. 380, 382 (S.D.N.Y.1994) (noting

5    that court expertise with the subject matter of a case is an "irrelevant" consideration

6    under section 1404(a))).   And, because ARM has not demonstrated that the

7    convenience factors weigh in favor of transfer as discussed below in Section II.C,

8    Judge Fogel's previous experience with the case is not sufficient to warrant transfer.

9         Finally, even if this Court granted transfer of this action to the Northern

10   District, as ARM admits, there is no guarantee that the case would be assigned to

11   Judge Fogel.  (D.I. 79 at 11).   Rather, this case will go through the typical

12   assignment process.   (*See* D.I. 72-1 at Ex. M at L-R 3.3(a) (stating that the Clerk

13   assigns cases to a Judge pursuant to the Assignment Plan of the Court), Ex. N

14   (Assignment Plan of the Court), Ex. O at L-R 3-12 (describing process to determine

15   whether case is a "related case")).  Even ARM's "supporting" authority admits the

16   court realized that it lacked the means to ensure upon transfer that the case was

17   assigned to the judge that had presided over the previous case.  *Jackson v. Intel*

18   *Corp.*, No. 2:08-CV-154, 2009 WL 749305, at *4 (E.D. Tex.  Mar. 19, 2009).[7]

19   Thus, even if the case was ultimately assigned to Judge Fogel, the process will

20   result in delay of this action and transfer would likely result in a waste of judicial

21   resources.

22        Accordingly, the Northern District's previous experience with *Nazomi*

23   *Commc'ns Inc. v. Arm Holdings, PLC* does not weigh in favor of transfer.  *Acer*,

24   2009 LEXIS 80001, at *2; *see also ConnecTEL*, 2005 WL 366966, at *3.

25

26   _____
     [7] Moreover, the facts of *Jackson* are highly distinguishable from the current case where
27   there the plaintiff, over the course of twelve years, had litigated with *more than 75 parties*
     in proposed transferee district over the patent at issue in the pending case.  2009 WL
28   749305, at *4.  As such, this non-controlling case should be afforded no weight in the
     present transfer analysis.

Nazomi v. Nokia, et al.                          11                  NAZOMI'S OPPOSITION TO ARM'S
Case No. 8:10-cv-00151                                               RENEWED MOTION TO TRANSFER

## C.   The Convenience Factors Still do not Weigh in Favor of Transfer.[8]

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   The district court has discretion, under § 1404(a), "to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'"   *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244 (1988) (citation omitted).

In determining whether transfer is appropriate in a particular case, the Ninth Circuit in *Jones*, 211 F.3d at 498-99 laid out the factors to be considered by the court.   ARM agrees that some of the private factors do not apply; thus relevant factors on which ARM bears the burden are:   (1) plaintiff's choice of forum, (2) respective parties' contacts with the forum, (3) contacts relating to the plaintiff's cause of action in the chosen forum, (4) differences in the costs of litigation in the forums, (5) availability of compulsory process to compel attendance of unwilling non-party witnesses, and (6) ease of access to proof.   *Jones*, 211 F.3d at 498-99; (Ren. Mot. at n.3).

Relevant public factors on which ARM again bears the burden include administrative difficulties flowing from court congestion, local public interest in the outcome of a case, avoidance of conflict of law issues, and the unfairness of burdening citizens in an unrelated forum with jury duty.   *See Decker,* 805 F.2d at 843 (internal citations omitted).

Again, the party seeking transfer bears the burden of establishing that a transfer is warranted.   *Allstar*, 666 F. Supp. 2d at 1131; *see also, Decker,* 805 F.2d at 843**.**

---

[8] While much of the convenience issues were addressed in the previous round of briefing, Nazomi re-presents its argument here, in addition to addressing ARM's new arguments relating to the convenience factors.

1    In determining inconvenience to witnesses, courts accord "less weight to the

2    inconvenience of *party* witnesses … [where] they can be compelled to testify

3    regardless of the forum in which the lawsuit is ultimately litigated." *Allstar*, 666 F.

4    Supp. 2d at 1132; *see also*, *e.g.*, *Applied Elastomerics, Inc. v. Z-Man Fishing

5    Prods., Inc.*, No. C 06-2469 CW, 2006 U.S. Dist. LEXIS 75339, at *4 (N.D. Cal.

6    Oct. 6, 2006).

7    Similarly, "ease of access to documents does not weigh heavily in the

8    transfer analysis, given that advances in technology have made it easy for

9    documents to be transferred to different locations." *Metz v. U.S. Life Ins. Co.*, No.

10   09-CV-06811 SJO, 2009 LEXIS 126876, at *18 (C.D. Cal. Dec. 19, 2009) (quoting

11   *Szegedy v. Keystone Food Prod., Inc.,* No. 08-CV-5369 CAS, 2009 U.S. Dist.

12   LEXIS 83444, at *6 (C.D. Cal. Aug. 26, 2009); *see also, Mohamed v. Mazda Motor

13   Corp.*, 90 F.Supp.2d 757, 778 (E.D. Tex. 2000)).

14   Where the requested forum is geographically close to the current forum, as

15   here even in the same state, any "convenience" factors should be given less weight,

16   if even considered at all.  *See e.g., Barr*, 2009 WL 3497776, at *4.

17           **1.    ARM Failed to Show Inconvenience Sufficient to Justify Transfer.**

18

19   A party seeking transfer must establish that "a transfer will allow a case to

20   proceed more conveniently and better serve the interests of justice." *Allstar*, 666

21   F.Supp.2d at 1131; *see also, Decker*, 805 F.2d at 843.  As ARM concedes, factors

22   1, 2, 9, and 10 of the *Jones* § 1404(a) test do not apply in the present case.  (Ren.

23   Mot. at n.3).

24   To demonstrate that transfer is warranted, ARM has the burden to show that

25   the following factors demonstrate that the Northern District is *the* proper venue:

26   "(3) the plaintiff's choice of forum, (4) the respective parties' contacts with the

27   forum, (5) the contacts relating to the plaintiff's cause of action in the chosen

28   forum, (6) the differences in the costs of litigation in the two forums, (7) the

availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones*, 211 F.3d at 498-99. But, ARM fails to satisfy its burden to show inconvenience necessitating the disruption of the plaintiff's choice of forum. *See Decker*, 805 F.2d at 843.

### a. Defendants' Extensive Ties to the Central District of California Weigh Against Transfer.

Defendants have substantial presence in the Central District as set forth in detail in Nazomi's prior briefing on the subject. (*See* D.I. 72 at 11-12, 18-19.) Between Western Digital's and VIZIO's headquarters, and five of the eight Defendant groups having facilities in the Central District, as well as Iomega's headquarters in San Diego, the facts show that the Central District is a convenient venue for the Defendants and that the Central District houses a large portion of the evidence and party witnesses relevant to this case. (*See id.*).

As discussed above, ARM has not shown that: (1) no relevant defense evidence resides in the Central District, or (2) relevant evidence, including defense party witnesses, is in the Northern District.[9]  (Ren. Mot. at 2-6). While ARM attempts to make noise about a subset of Defendants' declarations from the first round of briefing addressing the accused functionality, nothing in those declarations has any bearing on venue, nor do those declarations suggest that any relevant evidence resides in the Northern District versus the Central District.  (Ren. Mot. at 9).  Further, while ARM mocks Nazomi's identification of Microsoft's Central District sales and retail locations, ARM neglects to acknowledge that sales and retail locations are the very type of Northern District contacts that ARM now hopes will help get its transfer motion across the proverbial line.  (*Id.*).

---

[9] Garmin and ARM now appear to be backing off from their argument in the first round of briefing that the location of outside counsel is irrelevant to the analysis in the face of the contrary law. *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("The factor of 'location of counsel' is irrelevant and improper for consideration in determining the question of transfer of venue").

1    In the current round of briefing, none of the Defendants' new declarations

2    unequivocally state that *no* evidence resides in the Central District, while also

3    unequivocally stating that evidence of any import does reside in the Northern

4    District.    The Defendants' vague statements relating to Northern District

5    employees, suppliers and locations are not sufficient to show that the unidentified

6    evidence in the Northern District is even relevant, let alone that it is of greater value

7    than evidence in the Central District, such that transfer is merited. *Heller,* 883 F.2d

8    at 1293. In fact, as discussed above in Section II.A.2, the only Northern District

9    contacts for many Defendants also exist in the Central District.

10    Thus, ARM has not made the required showing that: (1) the Defendants have

11    no relevant ties to the Central District, (2) litigation costs would be substantially

12    higher in the Central District because of the lack of the Defendants' connections to

13    the District, (3) defendant party witnesses are located in the Northern District but

14    not in the Central District, or (4) other relevant information of the Defendants is

15    substantially easier to access in the Northern District.  ARM has not met its burden

16    to show that the Central District is substantially less convenient for the Defendants

17    than the Northern District—particularly in light of the fact where the requested

18    forum is geographically close to the current forum, as it is here, any "convenience"

19    factor should be given less weight, if even considered at all. *See e.g., Barr*, 2009

20    WL 3497776, at *4.

21
22            **b.    Nazomi's Location and the Location of Its Witnesses
                       are Irrelevant to the Determination of Convenience.**

23    Nazomi stated unequivocally that it does not contest venue.   (D.I. 72 at 19-

24    20).   Nazomi selected this venue.   Further, Nazomi is subject to discovery and

25    state-wide trial subpoenas.   The three individuals whom ARM claims are key

26    witnesses—the named inventors of the patent—would be subject to subpoenas to

27    appear in the Central District for trial. (*See also* D.I. 72-17 (Declaration of Mukesh

28

1   K. Patel In Support of Nazomi's Opposition to ARM's Motion to Transfer Venue

2   and to Garmin's Joinder in ARM's Motion)).

3           Contrary to ARM's assertions otherwise, the Ninth Circuit does not expressly

4   require that both parties' contacts be analyzed in the transfer context.  Instead, in

5   *Jones*, the court set out factors that the court *may* consider in its determination

6   whether transfer is appropriate in a particular case.   *Jones*, 211 F.3d at 498-99

7   (emphasis added) ("A motion to transfer venue under § 1404(a) requires the court

8   to weigh multiple factors in its determination whether transfer is appropriate in a

9   particular case.  For example, the court ***may*** consider: . . .  (3) the plaintiff's choice

10  of forum, (4) the respective parties' contacts with the forum, (5) the contacts

11  relating to the plaintiff's cause of action in the chosen forum.").  This Court has

12  discretion, under § 1404(a), "to adjudicate motions for transfer according to 'an

13  individualized, case-by-case consideration of convenience and fairness.'"  *Stewart*

14  Org., 487 U.S. at 29 (citation omitted).  While this Court is not expressly required

15  to consider Nazomi's location and its witnesses in its convenience analysis, even if

16  considered, Nazomi's ties to the Northern District do not weigh in favor of transfer.

17  Accordingly, ARM's arguments relating to the location of Nazomi's evidence and

18  witnesses, and the ease of access to the information remain irrelevant.

19                        **c.      The Location of ARM, Its Evidence, and Its Witnesses**
                                    **are not Compelling.**
20
21          ARM has failed to demonstrate that its location, and the location of its

22  evidence and witnesses warrant transfer to the Northern District.  In fact, ARM has

23  failed to set forth any evidence that its relevant witnesses and evidence are actually

24  located in the Northern District.

25          In its original motion, ARM argued only that "*to the extent that any ARM*

26  *witness in the United States has relevant evidence*, that witness would *likely* be

27  located at ARM's facility in the Northern District") (Ren. Mot. at 20 (emphasis

28

1    added)).[10]   But, a party seeking transfer cannot rely on vague generalizations of

2    convenience; rather it is "obligated to identify the key witnesses to be called and

3    present a generalized statement of what their testimony would include."  *Heller,*

4    883 F.2d at 1293.

5            The Renewed Motion arguments fare no better.  While ARM cites its sales

6    activities and location in the Northern District, there is no demonstration that

7    relevant evidence resides there or that *no* relevant evidence resides in the Central

8    District—a total failure on the part of ARM to meet its burden.  (Ren. Mot. at 13).

9            Even assuming that ARM had identified evidence or witnesses and that

10   intervenor ARM's witnesses and evidence are even relevant to the convenience

11   calculus, ARM's vague generalizations about the Northern District are mooted by

12   ARM's Original Motion concession that the "ARM Products are primarily designed

13   in the United Kingdom."  (Ren. Mot. at 17).  Travel from the United Kingdom to

14   San Francisco is no easier to facilitate than travel from the United Kingdom to Los

15   Angeles.

16           Further, ARM's claims of the convenience remain undercut by its recent

17   request to intervene other matters pending in the Central District.   *See*

18   *Microprocessor Enhancement Corp., et. al. v. Mindspeed Techs., Inc.,* Case No.

19   2:09-cv-00603-SVW-RNB, D.I. 10 (C.D. Cal filed Jan. 27, 2009); *Microprocessor*

20   *Enhancement Corp. et. al. v. Texas Instruments Inc*., Case No. 8:08-cv-01123-

21   SVW-RNB, D.I. 19 (C.D. Cal. Filed Oct. 09, 2008); *Microprocessor Enhancement*

22   *Corp. et al v. STMicroelectronics N. V. et al.,* Case No. 8:08-cv-01039-SVW-RNB,

23   D.I. 24 (C.D. Cal. Filed Sept. 17, 2008).  Notably, ARM's motions to intervene in

24   these cases were *not* accompanied by a motion to transfer.  *See id.*

25

26

---

27   [10] Interestingly, ARM is not aware of whether it in fact has facilities in the Central
     District.  (D.I. 51-1 at 18 ("Neither Nazomi nor ARM *appears* to have any facilities in the
28   Central District.") (emphasis added)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**d.   ARM's Speculative Predictions of the Location of
Third Party Evidence and Witnesses Lack any Merit.**

While convenience to third party witnesses is given weight in determining transfers, courts have held that the significance of this factor is "substantially reduced by ease of communication and interstate travel in today's business community." *Gen. Retirement Sys. of the City of Detroit v. The Wells Fargo Mortgage Backed Secs. 2006-AR18 Trust*, Nos. C 09-1376 SI, C 09-1620 SI, 2009 WL 2137094, at *6 (N.D. Cal. Sept 5, 2007); *see also Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 10, 1996 A.M.C. 253, 257-8 (2d Cir. 1995).  The close proximity of the Central and Northern Districts underscores the fact that keeping the suit in the Central District will result in no greater inconvenience to third parties than the Northern District.  *See e.g., Barr*, 2009 WL 3497776, at *4.

In this jurisdiction, in order "to demonstrate inconvenience, the movant should produce information regarding the identity and location of the witnesses, the content of their testimony, and why such testimony is relevant to the action…. The court will consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case." *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 WL 508477, at *7 (N.D. Cal. Feb. 22, 2008) (quoting *Steelcase, Inc. v. Haworth, Inc*., 41 U.S.P.Q.2d 1468, 1470 (C.D. Cal. 1996)).[11]  The Federal Circuit has also held that the movant needs to show that the potential witness has relevant and material information.  *See In re Genetech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) ("A district court should assess the relevance and materiality of the information the witness may provide.").  Thus, to successfully demonstrate that the location of third party evidence weighs in favor of transfer, ARM is required to

---

[11]  ARM's own reliance on *Arete* is misplaced as the facts differ significantly from the current case.  The defendants in *Arete* disclosed detailed information about the intended witnesses, which included many party witnesses, including where they currently reside and what type of testimony they will offer.  *Arete*, 2008 WL 508477 at *8-9.

Nazomi v. Nokia, et al.
Case No. 8:10-cv-00151

18

NAZOMI'S OPPOSITION TO ARM'S
RENEWED MOTION TO TRANSFER

1    provide sufficient detail to allow the Court to determine the weight of the relevance

2    and materiality of the third party evidence.

3        ARM, however, relies exclusively on vague generalities about locations of

4    potential third party witnesses—failing once again to meet its burden. *Heller,* 883

5    F.2d at 1293.  Even in its second attempt, ARM still does not identify any potential

6    third party witness by name nor does not provide any potential witness' place of

7    residence.  Instead, ARM states only that there is a possibility that the inventors and

8    assignees of a few pieces of potential prior art and anonymous persons purportedly

9    employed at Sun Microsystems *may* be located in the Northern District.  (Ren. Mot.

10   at 13, Despite its burden, ARM has made no effort to determine whether any

11   witness is *currently* located in the Northern District—including any prior art

12   inventors or individuals at Sun who may or may not have relevant information.

13       ARM also fails to explain why any of the so-called third party evidence has

14   any bearing on the convenience factors.  The only prior art referenced by ARM is

15   the prior art already considered by the Patent Office as indicated on the face of the

16   '436 patent.  (Ren. Mot. at 8, 13).  And, as previously discussed, all of the

17   references are published and available irrespective of venue.  And, while ARM

18   attempts to rely on a fabricated issue about a possible ownership issue with Sun

19   Microsystems, ARM does not have the standing to assert third party Sun

20   Microsystems' rights. (Ren. Mot. at 13).  Thus, ARM's arguments relating to Sun's

21   potential claims are nothing more than a red herring.

22       Thus, in the face of binding precedent setting forth the third party

23   information that must be demonstrated to support transfer, ARM has failed to

24   satisfy even the most basic of the requirements—that third party evidence or

25   witnesses are actually located in the transferee venue or that any information

26   attainable from the evidence and witnesses is relevant.

27       Even if these unidentified third parties were located in the Northern District

28   and had any relevant information, which ARM has not shown, they would be

1    within the subpoena power of this Court pursuant to Rule 45(b)(2)(C) of the

2    Federal Rules of Civil Procedure.   Thus, there would be no reason that the

3    evidence, if even relevant, could not be obtained should the case proceed in the

4    Central District.[12]

5        To the extent that any costs associated with obtaining the prior art evidence

6    cited by ARM would be higher as a result of the current venue, there is no showing

7    that the difference would be more than negligible.  And, ARM has made no effort

8    to explain why its solution would not just be shifting the costs among the parties.

9        As such, ARM has failed to demonstrate that the convenience of third parties

10   necessitates transfer.

11              **2.    The Balance of Relevant Public Interest Factors Weigh
                        Strongly Against Transfer.**

12

13   Public factors include the administrative difficulties flowing from court

     congestion, the local public interest in the outcome of a case, and avoidance of

14   conflict of laws.  *See Decker,* 805 F.2d at 843 (internal citations omitted).  None of

15   these factors weigh in favor of transfer in the present case.

16

17              **a.    Administrative Difficulties Flowing from Court
                        Congestion is a Neutral Factor.**

18   Nazomi agrees with ARM that the time to adjudication is not discernibly

19   shorter in either District, and thus there is no basis for asserting that either Court is

20   more or less congested.  Accordingly, the court congestion factor does not support

21   ARM's burden to justify transfer.

22              **b.    Local Interest in the Outcome of this Dispute Weighs
                        Strongly Against Transfer.**

23

24   ARM's analysis of the factor of local interest in adjudicating the dispute

     leaves out an important consideration – the Defendants.  This lawsuit *does* have

25   specific ties to the Central District, where at least two of the defendant groups are

26

---

[12] ARM does not certify that there are no other third parties with relevant information to
the suit beyond the inventors and assignees of the cited prior art and, possibly, Sun
Microsystems.  ARM also does not certify that *all* third parties with relevant information
are located exclusively in the Northern District of California.

27

28

**Nazomi v. Nokia, et al.**                           20        **NAZOMI'S OPPOSITION TO ARM'S**
**Case No. 8:10-cv-00151**                                     **RENEWED MOTION TO TRANSFER**

headquartered in this District.  *See* Section II.B.1, *supra*.   Indeed, the Central District community does have a relation to the litigation, and thus this factor weighs heavily against transfer.

### c.   ARM Has Failed to Show that Consistency in Rulings and Application of Law Heavily Favor Transfer.

As discussed in great detail in Section II.B.2, above, there is no danger of inconsistencies in the rulings of this case and the rulings of Judge Fogel.  Even with unwarranted characterization of the prior litigation record, ARM has not shown that consistency in rulings or application of law strongly favors transfer.

### III.   CONCLUSION

ARM has failed to meet its burden of establishing that a transfer to the Northern District will allow the case to proceed more conveniently and will better serve the interests of justice.  For the reasons set forth herein, ARM's Renewed Motion to Transfer to the Northern District of California should be denied.

Dated:  August 13, 2010                COOLEY LLP


                                       /s/ *Sarah J. Guske*
                                       Sarah J. Guske

                                       Attorneys for Plaintiff
                                       NAZOMI COMMUNICATIONS, INC.